IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CR No. 22-404 |
| | ) | Washington, D.C. |
| vs. | ) | April 22, 2024 |
| | ) | 2:03 p.m. |
| ISRAEL EASTERDAY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:                Benjamin Joel Smith
                                   DOJ-USAO
                                   U.S. Attorney's Office
                                   for the District of Columbia
                                   601 D Street, NW
                                   Suite 3.1405
                                   Washington, D.C. 20530
                                   (202) 304-0977
                                   Email:
                                   benjamin.smith4@usdoj.gov

                                   Michael Matthew Gordon
                                   DOJ-USAO
                                   Criminal Division,
                                   Violent Crimes
                                   and Narcotics Section
                                   400 North Tampa Street
                                   Suite 3200
                                   Tampa, FL 33602
                                   (813) 274-6370
                                   Email:
                                   michael.gordon3@usdoj.gov

```
APPEARANCES CONTINUED:

For the Defendant:          Brittany M. Davidson
                            Geremy C. Kamens
                            OFFICE OF THE
                            FEDERAL PUBLIC DEFENDER
                            Eastern District of Virginia
                            (Alexandria)
                            1650 King Street
                            Suite 500
                            Alexandria, VA 22314
                            (703) 600-0817
                            Email:
                            brittany_davidson@fd.org


Probation Officer:          Cystal Lustig

Court Reporter:             William P. Zaremba
                            Registered Merit Reporter
                            Certified Realtime Reporter
                            Official Court Reporter
                            U.S. District Court
                            for the District of Columbia
                            333 Constitution Avenue, NW
                            Room 6503
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

3

P R O C E E D I N G S

COURTROOM DEPUTY:  Please be seated, everyone.

THE COURT:  Okay.  Good afternoon, everyone.

COURTROOM DEPUTY:  Good afternoon, Your Honor; good afternoon, everyone.

We're here today for a sentencing in Criminal Action 22-404, the United States of America versus Israel Easterday.

Beginning with counsel for the government, please approach the lectern and state your name for the record.

MR. SMITH:  Good afternoon, Your Honor. Benjamin Smith for the United States.

I'm joined telephonically by videoconference by Mike Gordon, AUSA for the United States.

THE COURT:  Thank you.

Mr. Gordon, can you see and hear me?

MR. GORDON:  I can.

Good afternoon, Your Honor.

THE COURT:  Good afternoon.  Nice to have you with us.

MS. DAVIDSON:  Good afternoon, Your Honor. Brittany Davidson and Geremy Kamens on behalf of Israel Easterday, who's present.

THE COURT:  Thank you so much.

Mr. Easterday, good afternoon to you.

4

THE DEFENDANT:  Good afternoon.

THE COURT:  Okay.  We're here today for sentencing.

All right.  I've reviewed the Presentence Report and investigation; thank you very much, Ms. Lustig, for the recommendation.

I've reviewed the memorandum submitted by the government.

I've also reviewed the memorandum and letters submitted by the defense, as well as the video submitted by the defense.  So I think we're ready to proceed.

Anything preliminary, Mr. Gordon?

MR. GORDON:  No, Your Honor.

I do want to just note two other things.

There is a pending motion at 76.  That was the government's motion at the end of trial to have the defendant detained between then and today.

And then there's a new motion filed, I believe premature, but by the defense today for bond pending appeal.

THE COURT:  Right.

And so, yes.

So the first I will deny as moot given that now here we are.  And it took a while to get the full briefing and all the materials on the post-trial motions and then to write my opinion on that, which didn't leave a lot of time

for pretrial detention.  So that would be moot.

And then I'll hear argument on the bond pending appeal after the sentence.  I'll be prepared to discuss that.

So anything preliminary -- I'm sorry, Mr. Gordon, is that all for the government on preliminary matters?

MR. GORDON:  It is, Your Honor.

THE COURT:  Thank you so much.

Ms. Davidson, anything preliminary?

MS. DAVIDSON:  I'm not sure whether the Court would like to hear argument regarding our objections to the PSR.

We submitted briefing on it.  We did just have a few points that we wanted to follow up on, and we're happy to address that now.

THE COURT:  Okay.  I'm happy to hear if there -- I mean, again, right, I reviewed your points in the memorandum on that; but if there's something else you want to say, I'm happy to hear that.

MS. DAVIDSON:  Thank you, Your Honor.

There's just a few points.

Specifically, you wanted to talk about the application of 2A2.4 versus 2A2.2.

The government's objections, just because they filed their sentencing memoranda a day after us, we just

wanted to respond briefly there.  And then just briefly talk about acceptance.

With respect to 2A2.4, Your Honor, the aggravated assault Guideline is meant for serious assaults that involve planning or even committed for hire.  And that is why there is a heightened standard for this Guideline that not only requires a presence of an aggravating factor such as serious bodily injury, but it also requires an intent component.

And at trial, the government did not have to prove that Israel's intent for either the -- for both of the 111(a)(1), 111(b) charges, but they do here, and our position is they simply cannot meet that burden for this heightened Guideline.

THE COURT:  But doesn't much of that fly in the face of what I ruled in the post-trial -- in my post-trial opinion?

MS. DAVIDSON:  Well, I actually think it's different, Your Honor.

Kind of what I just mentioned that, in terms of the statute 111(a), 111(b), there's not the specific intent.  And I would submit that the Guideline here for aggravated assault actually requires use of a dangerous weapon with the intent to commit bodily injury, and I would say that's different.

THE COURT:  Isn't that pretty easy to find?

I mean, why else is he spraying it in the officer's face?

MS. DAVIDSON:  I think that there's a difference, Your Honor, with respect to weapons that are inherently dangerous, such as like a firearm or a knife or, like, driving a car at a fast speed towards an officer that we can infer that that individual is intending to cause serious bodily injury or bodily injury.

But I do think it's different when we have an object that is otherwise less harmful, because it's possible to cause serious bodily injury, but I don't think we just get there by the fact that they used that.

And I think if we look to the facts of this case; specifically the conduct --

THE COURT:  It sounds awful like a "capable versus likely" argument, isn't it?

MS. DAVIDSON:  I think it's different, Your Honor, because I think "capable versus likely," which I know that we have briefed extensively before the Court so I won't get into that argument, but I think it's really important here that the focus is on intent and we look at the facts here.

We also refer to his behavior prior to January 6th and afterwards to, I think, support the position that he didn't have the intent to cause bodily injury.  And I appreciate the Court's position, but I think that this is so

important, because the difference between applying 2A2.2, the aggravated assault, and the 2A2.4 is so drastic.

I mean, when we have the lower Guideline for impeding and obstructing officers under 2A2.2 -- sorry, Your Honor, a lot of 2A2.2s -- under the lower Guideline, Your Honor, our calculation of the Guidelines Range is 6 to 12.

Or if the Court were to find that every single enhancement under that Guideline were to apply, I think his Guidelines Range -- let me just see quickly -- I think it would be something along the lines of 18 to 24.  And so we're talking about a few years versus what his Guidelines are under the more egregious one, aggravated assault, is more than a decade.  And that's such a big difference that I think it's worth referring to the Guideline itself; that there is a level of intent that is required to trigger the heightened Guideline.

And so that's our position, Your Honor, is that we don't have that intent here.  We have to look at more than just the conduct itself, we have to look at what was Israel's intent on the day of January 6th.

And I think the fact that -- Your Honor knows very well what happened that day, but in terms of his offense conduct, he didn't bring pepper spray with him.  He was handed pepper spray, he sprayed it at a distance, it was

outside.

But in addition to that, Your Honor, there isn't anything to indicate that he planned violence prior to January 6th. There's nothing to indicate that he supported it.

THE COURT: I agree with the lack of planning. And I agree with the fact that if you look at the rest of his life, that that wouldn't give any evidence that he intended to inflict bodily injury, but I don't think that overweighs what happened on the day.

MS. DAVIDSON: I understand, Your Honor.

Again, our position is that a higher level of intent is required, and we just don't think that the government has met it here by a preponderance of the evidence.

Additionally, we did just want to briefly respond to the government's objections, specifically with respect to grouping and then with respect to obstruction of justice.

With respect to grouping, we agree with the probation officer that essentially all the counts should group together under Count 1.

And then, of course, we have Count 3 that is separated under the Guidelines. But all of the felonies relate to his assaultive conduct, which is the use of the dangerous weapon. So it makes sense that all those group

together.

To the extent there is anything relating to him walking around the Capitol, those are related to the misdemeanors, Counts 7 through 9, which, of course, are not calculated under the Guidelines.  So we would just request that the Court affirm Probation's conclusion with respect to grouping.

And then the other point, Your Honor, is obstruction of justice.

The government is arguing that Israel engaged in destruction of evidence almost two years before he was even aware of a federal investigation or was arrested.

And in doing so, they argue that the news outlets were widely reporting that rioters were being investigated and arrested.

And as we also have extensively argued before the Court in our motion to suppress, there were more than 12,000 people at the Capitol that day and then a little over a thousand have been prosecuted.

And so the government's position that Israel should have known that, at some point in the future, he might be prosecuted when there are thousands of people at the U.S. Capitol is just a really big leap, especially because they didn't even get around to investigating him until more than a year later, and then not even arresting

him until almost two years later.

With respect to the substance of their argument itself, Israel deactivated and then reactivated his Facebook.  But I do believe that the government is speculating about what actually happened to his Facebook and his posts, and we don't have any evidence that they were related to January 6th.

THE COURT:  Well -- but it's not a bad inference -- I mean, isn't that the most likely inference?  Certainly, you wouldn't argue the most likely inference is coincidence.

MS. DAVIDSON:  I wouldn't argue that, but I don't think there's enough to even support that inference that the reason he -- and I do just want to say, he deactivated and then reactivated.  So I do think that's a big difference between deleted his Facebook and then --

THE COURT:  Well, wasn't the deact -- and if I'm misunderstanding, please correct me.

Wasn't the upshot of the deactivation and reactivation and deletion of what was there on January 6th?

MS. DAVIDSON:  I think in terms of what was there, I don't think we even really know what was there that was deleted, and I think that's part of the problem.

THE COURT:  But -- understood.

But if -- but whatever was there was deleted,

correct?  We don't know what it was, but you would agree that whatever was there was deleted?

MS. DAVIDSON:  Again, I think the part that I have a little bit of trouble with, Your Honor, I'm not trying to dance around the subject.  It's just that I don't even know what the government is arguing was potentially deleted.

I think there's been --

THE COURT:  But we could have any posts or video that he took or things that he said that day?

MS. DAVIDSON:  Right.  But I think there should have been at least some more concrete examples of what specific things were deleted.  And I think that's --

THE COURT:  Well, they don't know.

I mean, they've given the genre of what was deleted --

MS. DAVIDSON:  Right.

THE COURT:  -- but how could they know beyond that?

I mean, I guess if they had other people he'd contacted.

But what else should I infer other than he was deleting incriminating, and I use that in the lay sense, negative images and posts from that day?

MS. DAVIDSON:  I think that is a reasonable way to infer what happened.

But I think what we're dealing with is also a 19-year-old at the time.

And I don't -- in terms of deactivating, reactivating, I mean, I think that there are a lot of different responses and a lot of ways to view what happened, Your Honor. I don't think it is just necessarily that there was incriminating information as opposed to potentially getting spooked.

And so even taking the Court's inference about that, I do think it is still a very big leap to say that, on January 7th, he had enough knowledge to know that he was going to be investigated and prosecuted, especially given the timeline of this case; that federal authorities did not even contemplate his case until April 28, '22, and they did not arrest him until December '22, and we're talking about conduct that --

THE COURT: Well, let me ask you: So if you commit a crime that you know you've committed a crime, but given the circumstances, because it's in some remote location or for other reasons, you think the police may -- the odds are that they won't ever uncover it and you destroy incriminating evidence, is that obstruction?

MS. DAVIDSON: I think this goes back to my point, Your Honor, just in terms of the geofence, that there's a lot of people on January 6th, and there was a lot of news

14

coverage.

I do not think, on January 7th, Israel had enough information to know that he would likely be prosecuted and that his intent was to thwart a federal investigation. I do not believe that Israel had that requisite intent to trigger this enhancement almost two years before he actually was prosecuted.

And I think, getting to the point, too, Your Honor, is that, whatever he did, the deactivation/reactivation, did not actually thwart their investigation. They were able to -- I believe they sent a preservation letter to Meta in April of 2022, but they --

THE COURT: Right, but "attempt" is enough, right?

MS. DAVIDSON: Right.

But I do think there still needs to be that nexus in terms of -- I think what I'm saying, Your Honor, is that there has to be that attempt to -- with the knowledge that there is that federal investigation looming.

THE COURT: Right.

So the first point is, I think, your stronger point. The second point that it didn't succeed, I don't think that's relevant, right?

MS. DAVIDSON: I understand, Your Honor.

My point -- and that's a good point.

My point is also, though, that they were able to

have almost 100 pages returned from Meta and they were able to successfully prosecute Israel.  So I do just think, in terms of this type of enhancement, it's not applicable in this case.

And I would just say, you're right, the strongest point is that -- the time frame of this case; that it's two years after that deactivation/reactivation happened.

And then the last part, Your Honor, that I did just want to emphasize is that Israel should get acceptance of responsibility, a two-level reduction.  We walked into trial and one of the first things we said is that he accepts responsibility for felony assault and that the jury should find him guilty of felony assault.

And our challenges at trial were more legal-related in terms of what constitutes a deadly and dangerous weapon and bodily injury, and, you know, is there enough evidence about the assault for Officer Acevedo. We never contested anything regarding the facts of this case, it's just which legal buckets did it fall under.

And I think in addition to that, this is one of the rare cases where acceptance of responsibility is warranted, especially given the level of remorse that Israel has demonstrated, which is exhibited through his letter to the Court; and also as his family has reiterated, if he could go back in time, he never would have gone to the

16

Capitol.  I think given what happened at trial and his behavior post-trial, too, warrants acceptance of responsibility.

THE COURT:  All right.

I think -- I mean, I think it's closer to the line than for many who go to trial, but I think it's just a tough argument where -- that, yes, of course, you admitted the conduct, it was on video; there's not -- you couldn't deny the conduct, but I think there was more than a technical defense that was presented, so I just don't think you get acceptance in this case.

But let me just ask the government.  Mr. Gordon, on the obstruction point, do you want to answer my hypothetical, which is what knowledge of an ongoing or likely investigation there has to be to get obstruction, as opposed to my hypothetical where somebody knows he commits a crime, thinks it's unlikely he'll ever be prosecuted based on circumstances and destroys evidence?

MR. GORDON:  Yes, Your Honor.

So I do believe you have to have a belief that a federal investigation is possible, that it is -- you know, that it's out there, there's a possibility.  There's no "likelihood" requirement.  But you have to -- the obstruction does have to be aimed at obstructing your future federal investigation or prosecution; I think there is that

knowledge element.

But, Your Honor, if I can add some facts to that. There are facts that are already in our memo but I want to emphasize in response to what Ms. Davidson said.

She's talking about the two-years issue. But the two years later is when the letter was sent to Facebook. The action by the defendant occurred on January 7th. So the timeline is --

THE COURT: No. I think that --

MR. GORDON: -- he goes --

THE COURT: I'm sorry, I think her point was just, he didn't know there was a federal investigation, because that investigation didn't start until two years later, not that he didn't commit the acts until two years later.

MR. GORDON: Right.

But everybody knew, as early as the evening of January 6th itself, that the federal investigation was well underway and people were being identified and arrested. The FBI had already put out its "Wanted" poster at that point. It was all over the news. People were being identified. The first arrests happened on January 7th. This was everywhere.

And so on January 7th, that next day, defendant does the deactivation. And the key, and I think this is what Ms. Davidson is missing, is that the transactional

records on Facebook show activity.  They show that during the time period that the government seized, he was posting things, he was sending messages to people, he was including attachments on messages.  The Facebook transactional records show those kinds of actions, because that's data that Facebook keeps.  When you delete things from your account, you can't delete the transactional records; those were Facebook's records.

But --

THE COURT:  Right, and maybe -- right.

And we don't know what they were, but the most logical inference is they were not helpful or casting what he did in good light.

MR. GORDON:  Right, because the content was gone. And that's what's so -- that was what was so surprising about the search warrant return the government received, is Facebook's transactional records say, hey, there's this activity.

But then the account itself, the -- you know, when you want to see what the posts were, the attachments were or the photos were, there basically weren't any, and so that's where the inference that he had deleted content comes from.

THE COURT:  Okay.  Thank you.

All right.  Ms. Davidson, I think you covered each of the issues; is that correct?  Anything else that you

19

wanted -- any other preliminary issues?

MS. DAVIDSON:  No.

I think just for on the record, we did have all those objections in terms of the offense conduct and then the additional ones for the Guidelines, and so we would just incorporate what we've already put in our sentencing memo.

THE COURT:  Sure.  Okay.  Thank you.

Mr. Gordon, I will hear from the government.

MR. GORDON:  In terms of allocution, Your Honor?

THE COURT:  Please.

MR. GORDON:  Thank you.

I do want to start with where the defense left off, which is on what the subject of the trial was and whether or not Mr. Easterday accepted.

It's true that he began by acknowledging that he had assaulted Officer Collins [sic].  But to this day, including in their sentencing memo, he does not acknowledge assaulting Officer Acevedo.  He has never once, and still does not, accept responsibility that he assaulted Officer Acevedo.

THE COURT:  And just -- we -- I may have misheard you, Mr. Gordon, but -- and you may be conflating cases, I think you said "Officer Collins."  It's Officer Pollitt you're talking about, right?

MR. GORDON:  I'm sorry.  Thank you, Your Honor.

I am conflating cases; you did not mishear me. You and I have too many of these.

Yes, Officer Pollitt.  Thank you.

So he acknowledged that he had assaulted Officer Pollitt, right, spraying him from an arm's length away, directly in the face, but has never acknowledged that he assaulted Officer Acevedo.  He's acknowledged that he sprayed a substance into the air.  He didn't even accept that that was necessarily pepper spray, right?  He contested that fact.  So the idea that he admitted all the facts is not true.

I certainly acknowledge a few things upfront. I think the Guidelines, as the government laid them out in the sentencing memo, were correctly calculated.  I recognize it produces an enormous range that 151 to 188 months for a 19-year-old with no criminal history who seems to have otherwise led a not only sort of law-abiding but generally sort of helpful and upstanding life is enormous.

THE COURT:  Right.

I'm going to interrupt you --

MR. GORDON:  And if I weren't --

THE COURT:  I'm sorry, I'm going to interrupt you with one other point:  That wasn't the Guidelines calculation, that's your calculation, right?  In other words, the Guidelines calculation is 135 to 168.  You

believe, because of grouping, it should be higher?

MR. GORDON:  Grouping and the obstruction enhancement.

So the government's calculation differs --

THE COURT:  No, no, the obstruction is in there.

MR. GORDON:  They did then.

Okay, so they've got -- I see that now.

They're at 33, the government put it at 34 because of grouping.

But even if the Court accepted the -- or denied the government's objection on grouping and accepted the Guidelines calculation as it was calculated by Probation and it was 135 to 168, even the low end of that Guidelines at 135, and I'll sort of preface that, if the Court did make that determination, if you accepted Probation's calculation and said that it should be 135 to 168, I would move the government's recommendation down from the 151, the bottom of what we thought the Guidelines is, I would move it down to the bottom of Probation's range, to 135; I wouldn't keep it at 151.

I'm advocating for the low end of the ultimate Guidelines Range, because I do recognize the mitigating factors that are present here.  I think that's important.  I expect Ms. Davidson or Mr. Kamens to speak ostensibly about those things.

But focusing on Mr. Easterday and his youth and his, you know, life outside of January 6th, I think sort of erases the victims of this crime and focuses on the wrong person, right?

We see -- we hear nothing about what Officer Pollitt and Officer Acevedo, what their lives were like before this other than their testimony on the witness stand.

And these are two people who dedicated their lives and careers to protecting others; to putting their bodies physically on the line and to put them in between on January 6th.

People were trying to attack the Capitol and attack democracy and our lawmakers, the building, our system of government, our way of life, these officers put their literal bodies in the way.

They're heros here.  And the way the defendant treated them was as enemies.  For no reason.  He didn't know them.  There's no prior animosity between Officer Pollitt and Officer Acevedo.  It was solely because they were wearing uniforms and they dare to stand in the way of the mob.

And so for that, the defendant assaulted them. And he did it with a weapon, a weapon that not only would cause injury but did, right?  We heard from both the officers how they were affected.

And Officer Pollitt, his injury is particularly, you know, terrifying because of, you know, not only -- you hear from experts about what could happen, you could be disoriented.  The officers were scared because somebody could potentially take their weapon from them.

But unlike a lot of officers who were assaulted on January 6th, that actually happened to Officer Pollitt, right.  He was so impacted by the spray from the defendant that he, first, essentially was unable to keep himself from getting cornered, something that he was very much trained not to allow to happen.  Then essentially smothered.  Then he fainted, collapsed, lost consciousness and fell into the crowd.

At that moment, Officer Pollitt was completely at the crowd's mercy.  Anything could have happened to him. And other officers who got pulled into the crowd or were vulnerable had horrible things happen to them at other locations of the Capitol.

The fact that something worse didn't happen to Officer Pollitt is just purely luck, it's all it is.  And I don't think that should benefit or harm the defendant, because I'm sure that if something like what happened to Officer Fanone, that happened to Officer Pollitt, where he had been repeatedly tased in the back of the neck after being pulled out into the crowd, maybe another AUSA will be

arguing about how that's the defendant's fault here.  But it's just luck that that didn't happen; it's other people's actions.

What the defendant is responsible for is putting Officer Pollitt in that situation, with no regard for Officer Pollitt's life or what had happened to him or what kind of person he is or his age or his family or what people in the community might say about what a good officer or protector he is.  That assault was brutal, it was cruel, it was deliberate, right.  It was, you know, a point-blank-range deployment of a weapon that Mr. Easterday knew would hurt Mr. Pollitt and did.

So then after he -- you know, we all saw it on video multiple times.  Right after doing that assault, Israel Easterday turns and he essentially like scampers across and out of the way of that assault, right.  He sort of extricates from that, not because he feels bad about it, he did something wrong and he's trying to escape the Capitol or he's worried about retaliation.  He's just moving away so there's no retaliation from the officers.

Then someone else hands him another canister.  And any claim that he didn't know what this stuff was going to do at that point is ludicrous, because he had just used it on Officer Pollitt.

Then he gets it.  And then that shot that we

freeze-framed for the Court and for the jurors, he smiles, if not smirks.  He knows exactly what he's been handed and what he can do with it.  He's eager to use it again.

And that's what he does.  After a little bit of trouble figuring out how to make it work, he then, in the Court's words, crop-dusts another group of officers.

And this one is in some ways, I guess, better because it's not at point-blank range.  But in some ways, it's just worse, because this is so indiscriminate in terms of its targeting.  He's just trying to spray any officers he can, hurt anyone he can.  He's just trying to inflict pain for the sake of it, because these officers have a temerity to defend our country.

These actions are horrible, they deserve significant prison time, they're significant assaults.  And so while I personally think that the Guidelines end up being a little high in this case, and I understand the Court, because I've had sentencings with you before, I have a sense of where you're going to go here, I can pretty well anticipate that you're likely to vary downward.

I don't think you should vary downward by a ton. I've never seen a -- I'm sorry, Your Honor.

THE COURT:  Let me ask on that point, Mr. Gordon. And your conduct of this and many of these cases has been exemplary as you've been, I think, thoughtful and fair in

your dealings with counsel and your presentations of arguments.

But here, the sentence that you're asking for is more than twice any sentence I've given for January 6th.

MR. GORDON:  Right.

THE COURT:  It's not enough to say it's the bottom of the Guidelines; that's the number -- you have to explain to me why you think that that's twice -- more than twice as bad as people who brought guns and lost guns, who were involved in other melees.  We had a few defendants whose conduct has been pretty serious, so tell me why you want to propose this number.

MR. GORDON:  So first, Your Honor, I don't, I don't think it's twice as bad as some of those cases.

And that's part of the issue here is I don't think you should have downward varied in those other cases, right. That's the core issue, is that the government's general position is that Guidelines sentences are appropriate here.

And if I have the freedom to advocate for any sentence, I might not be advocating for a Guidelines sentence, but we need to be consistent, not just because I'm a cog in a machine but because it becomes unfair to defendants generally if it's just a roll of the dice on which prosecutor you happen to draw, that instead, the government is generally advocating for Guideline sentences,

and that way we're treating people consistently with a sort of measured approach.

So both these things can be true.  I can ask you for the bottom of the Guidelines as a way of communicating to you that I don't think this case is -- that I think the Guidelines are high for this case.  And while I'm asking for a Guidelines sentence as a representative of the government, I anticipate the Court varying downward and don't think it's unreasonable for you to do so.

THE COURT:  Right.

And, again --

MR. GORDON:  So let's start with that.

THE COURT:  Right.

And, I think, again, you're not the Department of Justice, you are an AUSA.  And I appreciate the balancing act you have, and so I think you've handled that nicely in what you've just said, so I appreciate that.

MR. GORDON:  Thank you, Your Honor.

I do think, though -- so the most immediate comparison for you and I is the *Brian Mock* case, because we had that case, it went to trial, it also involved multiple assaults, right.

I do think that Mr. Easterday's conduct is worse than Mr. Mock's, because, you know, while Mr. Mock had four assaults, you know, they were particularly violent in terms

28

of the direct action or the injury caused, right.  He kicked at one officer, he shoved another, he threw a, you know, broken flagpole at a third, and pushed a fourth.

I think that the point-blank deploying of a chemical spray into, first, Officer Pollitt's eyes from an arm length away, and then sort of crop-dusting a group of officers, is far worse.

THE COURT:  Certainly, the injuries suffered were considerably worse in this case.

MR. GORDON:  Yes.

And I think the deliberate sort of infliction of pain on officers is worse.  I think that, you know, there's -- I don't think anybody would look at Brian Mock's broken flagpole tossed from, you know, 30 feet away or whatever it was at the group of officers, and Israel Easterday's can of pepper spray sprayed at point-blank range and think of those as equivalent weapons.

Both defendants had to know that if their weapon hit somebody, it could hurt.  But you've got to know that anyone would know the difference in how much pain you're going to inflict.

So I think that both the intent for Israel Easterday, the action, the weapon used, I think all those things are significantly worse than Brian Mock.  So I do think the sentence should be substantially higher than his.

You know, I think that the crop-dusting of the officers, as I was alluding to before, I don't think that should be, you know, diminished because of the distance, I think that the intent of it either shows just sort of the complete anarchy; that is, for you to hurt for hurt's sake, which is, frankly, sadistic.

And at that point, Mr. Easterday then enters the Capitol. And he's not done, right. At that point, he's trying to yank other people in, he's trying to make the invasion of the Capitol as -- you know, grow the mob as much as he can.

You know, he's there at that point trying to exacerbate the situation, to the extent he can. He roams around, he films some video. 13 minutes later, he leaves. That's the extent of his conduct here.

He goes home, this is all over the news. Next day, he logs on to Facebook, deactivates his account, seems to have deleted a lot of things, and then reactivates it. That's the conduct here.

So, you know, I don't know that I've ever had a case where the gap between what the defense is asking for and what the government is asking for is so large, right.

The government's requested sentence is around 11 years, the defendant's request is one year, Probation's recommended 7 years, right.

And, you know, I would ask that the Court, since I know you're going to vary downward, I would ask that you do so more in line with what Probation has recommended. And certainly, I think he should be higher than any assault case that you've sentenced before, because it's worse than the ones you've had before. It's not as worse as ones that some other judges have had, but I think this is the worst one that Your Honor has had.

THE COURT: Okay. Mr. Gordon, thanks so much, I appreciate it as always.

Ms. Davidson.

MS. DAVIDSON: Thank you, Your Honor.

The government just talked, I think, only about the offense conduct in this case. And as the Court is very well aware, under 3553(a), there are a lot of other factors that this Court has to consider when imposing a sentence on Israel.

As our first point, Your Honor, he was 19 years old when he committed the offense on January 6th. At that time, I just want to emphasize, too, Your Honor, he just started to leave his family farm two years before that. And what I mean by "leave his family farm," until he was 16 or 17 years old, he resided there for his entire life. And then two years before January 6th, he just started to leave where he grew up. And that was mainly for work purposes, to

31

go work construction, or if he had enough money to go to a local restaurant.

So for the majority of his life, he's mainly interacted with his parents and his siblings, who are all in the courtroom today, Your Honor. And now we're here talking about incarcerating Israel for more than a decade.

His conduct on January 6th was no doubt serious and we're not disputing that or trying to minimize that at all, but he has been convicted of multiple felonies that, of course, will have lasting consequences for the rest of his life.

The government's requested sentence of 135 or 151, whichever is the appropriate Guidelines range, equates Israel, as the Court just acknowledged, as some of the most serious January 6th defendants, who were leaders of far-right organizations and committed significantly more egregious conduct.

And 3553(a) requires the Court to focus on the defendant at sentencing. That doesn't erase or, of course, eliminate consideration of Officer Pollitt any other officer on January 6th, but the focus of why we're here before Your Honor is Israel.

And it requires the Court to focus on what sentence is appropriate for him. And, again, that takes into account more than just what he did on January 6th, and

32

I think that is especially true in this type of case.

We've talked about, as you said, the defendant's conduct, but I just want to talk about the other considerations, Your Honor.

Israel had an extraordinarily sheltered upbringing. And it is unlike any case that we have represented, and I think it's unlike any other January 6th case that we've come across, just given his age and his upbringing.

And we provided that sentencing video to the Court, because I think it's really difficult to articulate what that degree of isolation really looks like. You have to see it and you have to hear from his family members about what his life was like.

And I just wanted to reiterate a few points: That he was homeschooled until he was 14 years old by his mom. And after that, he stopped any type of education at that age to go work for his dad.

The family never really left their farm. And to the extent that they had visitors, there were other people under similar circumstances homeschooling their kids or otherwise adopted similar religious beliefs.

Anything that contradicted his parents' way of life Israel has described to us as being too worldly. So he didn't go into town, he didn't associate with peers his

33

age that went to public school.  He didn't even listen to mainstream music, because all of that, in Israel's world, was just too unlike anything he ever experienced.  And in many ways, he just started to see what life would look like outside of his farm when January 6th happened.

He met his then-girlfriend but now his wife.  He finally got to travel around the coast of the United States and to the Bahamas after practicing for years in that small pond next to his house.

And he got to experience new people and new things, and all that really came crashing down as a result of this case.  For the past year, he's been, once again, confined to his family farm.

And we think a downward departure even under 5K2.2 is even appropriate in this case.  His conduct was a reflection of an incredibly horrible and drastic decision that a teenager made, and we know that he is going to be subjected to a period of incarceration.  And Isreal knows that; he came to court prepared to face a sentence in this case.

But we want to emphasize his behavior did not involve any planning, it was under 20 minutes, and it represents a deviation from his character.

As you saw in the sentencing videos and in the letters, Israel means a lot to his family and to his

community, and he's described as a kind, generous, and hardworking young man.  He helps a lot of people and he really doesn't ask for much in return.  That is who the Court is sentencing today and that is who is going to address the Court very briefly.

So we just emphasize that what happened on January 6th was not really reflective of his character; and if he could go back in time, as has been repeated throughout today, he would not have gone at all.

And even if the Court would find that he's actually not eligible for that departure, given one of the requirements that he not use a dangerous weapon, we do think it is significant for the Court to consider in terms of issuing a downward variance sentence.

Another reason, Your Honor, we feel like 12 months and one day is appropriate in this case is given his conduct while on pretrial release and also subjecting him to a longer period of supervised release.

He's maintained perfect compliance over more than the past year.  He's been responsive to his PO.  He has shown up to court every single time when he needs to.  And he hasn't gotten into any trouble.

And I would just like to emphasize, too, that his time on pretrial release, although a blessing that he is out and with his family, but it has, of course, been really

difficult for him.

He has not been able to work, and that has resulted in him not being able to afford the basic necessities that we enjoy.

And he's worked really hard building sheds and building the house that we provided pictures to the Court in our sentencing position.

And while other people get to experience maybe a quieter and simple life at his house while an Airbnb, as the Court is aware, him and his wife are living in that tin shack several feet away from the property -- on the property, several feet -- I'm sorry -- away from the house. And so that is how bad his financial circumstances are, Your Honor. But if he is subject to a longer period of supervised release, that is also a significant punishment.

And we like the idea from the community members of having him participate in 500 hours of community service at the local jail. I think that the warden there offered that he could pick up trash on the side of the road. And then he's continued to participate with the food ministry with his church. And they've also offered to have 500 hours as a part of supervised release and they're willing to sign any type of certification to ensure that he does comply with those periods -- with that type of community service.

The last part, and I think it's a really important

36

part in these types of cases, are sentencing disparities.

I think in terms of the Guidelines, Your Honor, it has to be individualized, and it just can't be the offense conduct in this case.

And I understand Mr. Gordon's argument with respect to Mr. Mock and the Court's comments that, you know, maybe Israel's conduct here was significantly more serious on January 6th, but I think there are other factors in this case that are significantly more egregious than Israel.

Mr. Mock's behavior leading up to January 6th. The fact that he, I believe, testified at trial and mischaracterized what happened. And then after trial, he gave an interview to *The New York Times*. And I think that those are significantly -- or --

THE COURT: It's that last piece that I don't hold against him. But certainly the social media and what he'd said beforehand was vastly different from Mr. Easterday's.

MS. DAVIDSON: Yes.

And I think that it can't just be focused on what happened on January 6th, because I think that there are other aggravating factors that need to come into play when issuing a sentence.

And I think for Israel, leading up to January 6th, after January 6th and his compliance on pretrial release have all indicated how this was the worst decision of his

37

life and he's going to pay for it.  And I don't think sending him to prison for more than a decade is going to serve any type of sentence in this case, Your Honor.

And so one other part, just in terms of addressing the government's argument.  In their position, they cited a few cases for sentences involving pepper spray.  I think those cases were *Schwartz*, *Worrell*, and *McHugh*, and even *Khater*.

But I think as the government even recognized with respect to those defendants, they had prior felonies, convicted of different, more egregious felonies, members of Proud Boys, and so there are a lot of additional aggravating factors in those cases that just aren't present here, that warranted a higher sentence in those cases.

And so, Your Honor, for all of these reasons, we would request that the Court impose a sentence of 12 months and one day with the longer term of supervised release.

THE COURT:  Okay.  Thank you so much.

MS. DAVIDSON:  Thank you, Your Honor.

THE COURT:  Mr. Easterday, anything you wish to say before I impose sentence?

THE DEFENDANT:  Yes, Your Honor.

First, I would like to thank the Court for providing all of these assets and the manhours involved in my case.  I'd like to thank you for trusting me with my bond

release that I've had for the past year.

And I'm extremely sorry to the officers. I never seen that footage from a different perspective of -- with my own eyes, but it just hit very different when I saw it. I'm very sorry for all the officers that went through that that day, and my actions were -- there is no excuse.

I'd like to apologize to my wife. She didn't deserve any of this. I don't know if that's appropriate to say here but it feels like it is.

And my family, it was clearly the most stupidest decision I ever made in my life. If I could start my life completely over, I would do it very differently.

I'd also like to acknowledge that and express how much this case has already bettered my life.

And I had to write this down because my brain is pretty full of stuff.

This case has already helped me in many, many ways to be a much more, a much better person as far as how I process things in my mind. It has motivated me to push myself beyond what I thought was possible before.

As far as my actions, I learned to be a better husband, better example to my siblings, a more caring son, think about things before I do them. And by bettering myself, I will better the world around me from now on by spreading love and peace wherever I go.

And I humbly ask for your trust in me to do the right thing from now on and never to be in this situation again.

I'm here before you today accepting responsibility for my actions, deeply ashamed of myself. I ask for your mercy and the nation's forgiveness.

That's all I have to say.

THE COURT: All right. Thank you very much. You may have a seat.

So this is certainly a hard sentencing for all the reasons we've heard from the government and from the defense.

I'm going to start with the Guidelines. And I will accept the Guidelines as calculated by the Probation Office. Again, on the disputes, I believe that the grouping is appropriate into two groups.

I don't believe there is acceptance of responsibility. The government points out, I think, that this -- and as I said earlier, this was much more than a technical defense. There was a contesting even of the guilt for anything regarding Officer Acevedo. And, of course, you can't contest the video. The video is the video. But I think there was much contested, so this is not an acceptance-of-responsibility case.

I believe that the enhancement for obstruction is

appropriate, given that the only logical inference for activating -- for deactivating and reactivating is to delete incriminating conduct.  And, again, anyone would infer that they could suffer prosecution from what happened on that day.

And then I also believe that 2A2.4, rather than .2, is correct, because I believe there was an intent to commit bodily injury.

And so therefore the Guidelines are 135 to 168 months as I find them.

MR. KAMENS:  Your Honor, I believe you meant to say 2A2.2.

THE COURT:  I'm sorry.  Thank you, Mr. Kamens; that I do believe that that's correct -- I do believe there was intent to cause bodily injury.

So I've considered the 3553(a) factors.

And so as the government points out, Mr. Easterday, and I think you recognize these things now, that January 6th was no less than an intent and an effort to replace by force what our country had voted for.  And the mob was there because it hadn't achieved what it wanted to at the ballot box and wanted to, therefore, go by force.

Now, I don't know how much you even understood at the time what the confederate battle flag that you were wielding meant.  But what it means is rebellion.  What it

means is a contest to the lawful authority of the United States Government.  And even if you didn't fully appreciate that, you're carrying it, rallying others with it is a symbol of rebellion.

But the egregious part of what you did, and I think you know it, is what Mr. Gordon spent time describing, which is, you caused, and intentionally so, injury to officers who were just doing their job.  They weren't the opposing military, they weren't the opposing side, they were just doing their job, which was protecting the Capitol, letting the votes be counted, letting Electoral College be certified.

And for this, they get pepper sprayed in the face. For this, they suffered, again, emotional injuries, physical injuries.  All the officers that day, and I've heard from so many of them, still suffer from what happened on a day when they were just doing their job protecting the Capitol.  And their injuries, some of which you can see and some of which you can't, will always be with them.  And so will this injury to our country always be with us as a stain on our history, and you were part of that.

Now, Ms. Davidson is correct when she says that that's not the sum total of who you are, and so I think that I'm appreciative of the fact that all of your family members appeared here today and came a long way to be here,

thank you, all, for being here and showing your support. The video, I think, was very articulate in describing who you are and who you've been.  Your letters and the testimonial by other people show that this was aberrant behavior, and I don't believe that I should be concerned about you in the future.  But what you did that day deserves real punishment.

Now, I think the reason this case is different from a lot of cases, in addition to the good work you've done, is that you were 19 at the time.  Now you're still very young.  You're still -- you're now 23; is that right?

THE DEFENDANT:  (Nodding head affirmatively.)

THE COURT:  Right.

But 19 at the time, to me, that's probably the most significant factor in the sentencing; that you were very young and may not have fully appreciated what was going on there, and, as I said, that matters.

The fact that you weren't on social media and talking about overthrowing the government beforehand, the fact that you didn't go on afterward glorifying what had happened, that's also relevant.  And that you've been compliant since release, and, I think, have continued to be a contributor to the community is significant to me.

So I'm going to give you 30 months, that's two and a half years.  Now that's certainly less than the government

asked for but it's not nothing.  It's a lot of time.  Now, you've served some of that time, and with good-time credit, it's close to about two more years.  Again, that's a significant sentence; but I think it was significant behavior here, and I think it is in line with what has occurred.

I think the government points out Mr. Mock, and they're right, but, again, here I think that the distinguisher between this case and the *Mock* case is, again, the defendant's age at the time and the lack of social media.

So that's the sentence.  I believe it's the appropriate sentence.  It's a serious sentence.  So let me formally impose that.

So on Count 1, 2, 3, 4, 5, and 6, each of those counts I sentence the defendant to 30 months.  Counts 7 to 9, six months.  All counts to run concurrent.

Two years of supervised release on Counts 1 through 6.  No supervised release on the other counts.

I will not impose a fine, because the defendant, I find that he is not -- does not have the ability to pay it.

I will also order restitution in the amount of $2,000, to be paid $100 a month upon release.

I'll also order 500 hours of community service in

44

the fashions that have been proposed by the defense.

While on supervision, you shall abide by the following mandatory conditions, as well as all discretionary conditions recommended by the Probation Office in part B sentencing options of the Presentence Report.  Those include not committing other federal, state, or local crimes, unlawfully possessing a controlled substance.  You must cooperate in the collection of DNA.

I'm not going to impose any of the financial restrictions or substance abuse testing.  I don't think that's required.

I will have a Re-Entry Progress Hearing within 60 days after release.

Ms. Davidson, do you wish to propose a facility?

MS. DAVIDSON:  Yes, Your Honor.

I think our recommendation, and, again, I know it's just a recommendation to BOP, but -- would be to FCI, a low-security facility.  I think that there is one in Kentucky, FCI Manchester.  It's a medium facility, but it does have an adjacent minimum security satellite camp.

THE COURT:  Okay.

Well, I'm going to recommend placement at FCI Manchester, Kentucky, satellite low security camp.

MS. DAVIDSON:  Yes.  Thank you, Your Honor.

THE COURT:  Okay.

Now, we'll talk about bond in a moment.

But you do have the right to appeal your conviction, Mr. Easterday.

You may appeal within 14 days after the entry of judgment or within 14 days of the filing of the Notice of Appeal by the government.

If you're unable to afford the cost of appeal, you can may request permission from the Court to file an appeal without cost.  You may also apply for court-appointed counsel.  Do you understand that?

THE DEFENDANT:  I will not let you down.

THE COURT:  Okay.

Do you understand, though, about your right to appeal?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.

All right.  Are there any objections to the sentence imposed not already noted on the record, Mr. Gordon?

MR. GORDON:  No, Your Honor.  Thank you.

THE COURT:  Ms. Davidson?

MS. DAVIDSON:  No, Your Honor.

THE COURT:  All right.

Mr. Gordon, are you -- what's the government's position on bond pending appeal?

MR. GORDON:  Yes, Your Honor.

Well, even before that, I think the issue is that the defendant should be taken into custody to begin serving his sentence immediately.

THE COURT:  Right.

So I mean, that's the question I'm asking, detention pending appeal.

MR. GORDON:  The reason why I bring them up separately, Your Honor, is just because legally they're separate issues.

And first, because the bond pending appeal, before we even get into any merits arguments, it should be denied as a purely technical -- on a technical matter, which is that that motion isn't ripe until an appeal is pending. That's sort of procedurally the way that law has to work.

THE COURT:  All right.

I think that's fair, but I suppose to -- so we don't end up coming back, do you want to argue your position assuming ripeness of that motion?

MR. GORDON:  Yes, Your Honor.

THE COURT:  Okay.

MR. GORDON:  So, first, you know, we briefed the motion, you know, for detention post trial.

THE COURT:  Right.

MR. GORDON:  And unless I missed it, did the

Court -- did I miss it -- did the Court issue a written ruling on that?

THE COURT:  No, no, I didn't, because -- and that's what I said earlier was now moot because he was sentenced.  There wasn't time between my ultimate decision on the post-trial motions and the sentencing.

MR. GORDON:  Yes, Your Honor.

So from the moments -- from the law, from the moment the trial ended, the defendant should have been in custody.

He was convicted of two crimes of violence -- actually, sorry, four crimes of violence, and so, you know, he should already be in custody.

So he shouldn't now be allowed to essentially further what was -- again, the government created the problem, I recognize, by not citing the Court the proper law at the time, but we shouldn't sort of double-down on that error of improperly applying the law and allow him to continue to remain out, not only after that trial, being convicted of crimes of violence, but now having been sentenced to prison for having committed multiple crimes of violence.

He, you know, essentially should be in jail yesterday, and so the soonest we can rectify that is to have him in custody beginning today.

THE COURT:  Okay.  I'm sorry.

MR. GORDON:  The -- I recognize that moves to the next issue of, okay, notwithstanding that, should he then -- because what you would have to be then granting him is essentially release pending appeal.

THE COURT:  Right.

MR. GORDON:  I grant in practical matter, it's continuing the bond, but in a legal standpoint, it'd be release.

I don't think it's proper for a couple reasons.

First, he's not appealing a 1512 conviction, right, where there is a live issue that is currently pending before the Supreme Court; it's just been orally argued. There are a lot of defendants who are making that argument. But, hey, this is happening and there might be an issue here to decide on.  That's not this case.

The defendant is asserting instead that his bond pending appeal is grounded on having a possibility of success on the idea that he didn't commit crimes of violence at all and these weren't deadly or dangerous weapons.  And I don't think that's a well-founded argument.  If it was, pretty much every defendant could assert that, hey, I'm going to appeal something and, therefore, I should be released while I do so.

You know, Your Honor, I've -- you varied as I

49

expected you would, but the sentence is a much shorter one than the government was requesting.  And I think that the, you know, general deterrence value, not the specific deterrence, I also am not particularly worried about Mr. Easterday, but the general deterrent value of the sentence is lessened.

THE COURT:  Let me interrupt you.

But it doesn't -- even if there is a substantial question, if it's a crime of violence, then that doesn't matter, right?

MR. GORDON:  I agree, yes, Your Honor.

There's sort of no outs here.  He should be --

THE COURT:  I think the only out is under 3145(c), exceptional circumstances, right?

MR. GORDON:  And as we briefed extensively, that bar is incredibly high --

THE COURT:  Right.

MR. GORDON:  -- for what constitutes exceptional circumstances.

THE COURT:  Okay.

Ms. Davidson, again, you don't -- in your motion for bond pending appeal, you don't talk about crime of violence.  But if I find it's a crime of violence, then your only out is exceptional circumstances, right?

MS. DAVIDSON:  I think so, Your Honor.

I do just want to emphasize, though, I mean, Probation did recommend, as part of their recommendation to the Court, that Israel self-surrender.

THE COURT:  I know, but -- and I have great respect for everything Ms. Lustig says, but I still have to follow the statute.  So doesn't the statute say for a crime of violence pend -- after conviction pending appeal, the only basis is 3145(c), exceptional reasons?

MR. KAMENS:  Your Honor, can I aid my colleague?

THE COURT:  Sure.

MR. KAMENS:  If I could just make a couple points, because we briefed this before.

THE COURT:  Yeah, sure.

MR. KAMENS:  And so the first issue in terms of crime of violence:  We argued in the prior briefing that there was a tension between the government's position about the definition of dangerous weapon, including something that is merely capable as opposed to likely.  And we said if the Court goes along with the government's view that a dangerous weapon is simply something that is capable but not necessarily likely, then that's --

THE COURT:  That's the *Borden* argument.

MR. KAMENS:  *Borden* is about intent.

But this is more about the -- whether it categorically fits the force clause, because -- and not

simply about intent, but simply the force clause requires that the offense categorically require the use or threatened use or attempted use of force.

And when the definition of a dangerous weapon is so broad that it is anything that possibly could cause harm, it includes things like a snowball, for example.

And the problem is that there's a mismatch between the breadth of the government's view of 111(b) and the definition of the force clause. And because the definition of the force clause is a categorical inquiry, then you are including conduct that falls outside of the force clause when you adopt the government's view of what a dangerous weapon is.

So that's part of the briefing before. And we would suggest that, given the Court's view and the government's view, this construction is -- means that 111(b) is not a crime of violence.

But setting that issue aside, even if you were to find that it is a crime of violence, then the Court certainly has the power to find under 3145(c), exceptional circumstances. We've briefed that as well. It's -- I think the exceptional circumstances that we've presented are similar on appeal; I think the standard is identical as the issues that we briefed before.

THE COURT: Right.

MR. KAMENS:  And so there are sort of two issues here.  One is, is it a crime of violence, given the Court's -- the breadth of the Court's ruling on the scope of 111(b).

And --

THE COURT:  But let me ask you:  So even if I find it wasn't a crime of violence, then you're raising a substantial question.

But even if you're raising a substantial question, just as -- it still -- the sentence would still be appropriate even if -- weren't a dangerous weapon given, for example, a civil disorder conviction, correct?

MR. KAMENS:  I think the question is whether the Court's ruling could impact the sentence.  And it certainly would, given the nature of the Guidelines which are the anchor.

So the Court can't insulate itself from this issue by saying, regardless of all the other legal issues, I would have imposed the same sentence.  That's not really the way it works.  If you move the anchor, then that certainly could impact the sentence.

We don't anticipate what would happen if we were to come back, of course --

THE COURT:  Okay.

MR. KAMENS:  -- but at least that's the way the

53

law works.  So I leave that for the Court's consideration.  But I think either -- the Court could decide that this is not a crime of violence.

And I think that the government misspoke and said that the 1752 counts could also be crime of violence -- crimes of violence, and that's not the case, because they encompass possession, which possession offenses, if you're talking about guns or anything, as a general matter, can't constitute crimes of violence categorically.  So we're only talking about the 111 counts.

THE COURT:  Right.

MR. KAMENS:  And then separately, we think that there are exceptional circumstances here.

THE COURT:  Okay.

All right.  I think, again -- first of all, let me make clear, I don't think that the defendant poses a danger to the community or flight, but that's not the standard anymore.  And I think the government is right that, first of all, that it cited the wrong section before and I, following that, didn't appropriately consider the proper section in releasing Mr. Easterday.

But I think at this point, detention is essentially mandated, because I do find that 111(b) is a crime of violence.  But even if it wasn't, I don't -- and the defense has raised a substantial question on the

54

dangerous weapon, I don't think that that would sufficiently alter the sentence, particularly given we're talking about the amount of time between today and any appellate decision, that the sentence would not be lower than that regardless.

And I don't find exceptional reasons exist, not because I don't think the defendant is unusual but the bar is extremely high. And this is, I think, again, if you're talking about serious health issues or other very unusual reasons, that's what constitutes exceptional, and here I think you really have a run -- largely a run of the mill kind of case, so I believe that the detention is mandated here.

So, Mr. Easterday, I'm going to detain you today. Let me also say, again, I'm going to see you when you're released. I believe that you have a lot of good that you will be doing for your community -- for all these people out there, for your community, I don't believe that I'm going to see you again in any negative sense, and I just hope that you continue to put the time in prison to good use in figuring out exactly what you're going to do to continue to help your community when you are released, all right?

Good luck to you, sir; thank you very much, Counsel.

All right. The deputies, thank you.

MR. KAMENS: Your Honor, can I ask if

55

Mr. Easterday can say bye to his family?

THE COURT:  He may.

COURTROOM DEPUTY:  All rise.

This Honorable Court is adjourned.

(Proceedings concluded at 3:16 p.m.)

56

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__April 29, 2024_____    _____

                               William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [3]** 3/2 3/4 55/3
**MR. GORDON: [30]** 3/17 4/13 5/7 16/19 17/10 17/15 18/14 19/9 19/11 19/25 20/21 21/2 21/6 26/5 26/13 27/12 27/18 28/10 45/20 46/1 46/8 46/20 46/22 46/25 47/7 48/2 48/7 49/11 49/15 49/18
**MR. KAMENS: [10]** 40/11 50/9 50/11 50/14 50/23 52/1 52/13 52/25 53/12 54/25
**MR. SMITH: [1]** 3/11
**MS. DAVIDSON: [24]** 3/21 5/10 5/20 6/17 7/3 7/17 9/11 11/12 11/21 12/3 12/10 12/16 12/24 13/23 14/14 14/23 19/2 30/12 36/18 37/19 44/15 44/24 45/22 49/25
**THE COURT: [71]**
**THE DEFENDANT: [5]** 4/1 37/22 42/12 45/11 45/15

**$**

**$100 [1]** 43/24
**$2,000 [1]** 43/24

**'**

**'22 [2]** 13/14 13/15

**.**

**.2 [1]** 40/7

**0**

**0817 [1]** 2/6
**0977 [1]** 1/16

**1**

**1 through [1]** 43/19
**100 [1]** 15/1
**11 years [1]** 29/24
**111 [9]** 6/11 6/11 6/20 6/20 51/8 51/16 52/4 53/10 53/23
**12 [3]** 8/7 34/15 37/16
**12,000 [1]** 10/17
**13 [1]** 29/14
**135 [7]** 20/25 21/13 21/14 21/16 21/19 31/12 40/9
**14 [1]** 32/16
**14 days [2]** 45/4 45/5
**151 [4]** 20/15 21/17 21/20 31/12
**1512 [1]** 48/11
**16 [1]** 30/22
**1650 [1]** 2/5
**168 [4]** 20/25 21/13 21/16 40/9
**17 [1]** 30/23

**18 [1]** 8/11
**188 [1]** 20/15
**19 [3]** 30/18 42/10 42/14
**19-year-old [2]** 13/2 20/16

**2**

**20 [1]** 33/22
**20001 [1]** 2/13
**202 [2]** 1/16 2/14
**2022 [1]** 14/12
**2024 [2]** 1/5 56/7
**20530 [1]** 1/16
**22 [1]** 1/5
**22-404 [2]** 1/4 3/7
**22314 [1]** 2/6
**23 [1]** 42/11
**24 [1]** 8/11
**274-6370 [1]** 1/22
**28 [1]** 13/14
**29 [1]** 56/7
**2:03 [1]** 1/6
**2A2.2 [4]** 5/23 8/1 8/4 40/12
**2A2.2s [1]** 8/5
**2A2.4 [4]** 5/23 6/3 8/2 40/6

**3**

**3.1405 [1]** 1/15
**30 [3]** 28/14 42/24 43/16
**304-0977 [1]** 1/16
**3145 [3]** 49/13 50/8 51/20
**3200 [1]** 1/21
**3249 [1]** 2/14
**33 [1]** 21/8
**333 [1]** 2/12
**33602 [1]** 1/22
**34 [1]** 21/8
**354-3249 [1]** 2/14
**3553 [3]** 30/15 31/18 40/16
**3:16 [1]** 55/5

**4**

**400 [1]** 1/21
**404 [2]** 1/4 3/7

**5**

**500 [4]** 2/5 35/17 35/21 43/25
**5K2.2 [1]** 33/14

**6**

**60 days [1]** 44/13
**600-0817 [1]** 2/6
**601 [1]** 1/15
**6370 [1]** 1/22
**6503 [1]** 2/13
**6th [26]** 7/22 8/21 9/4 11/7 11/20 13/25 17/17 22/2 22/11 23/7 26/4 30/19 30/24 31/7 31/15 31/21 31/25 32/7 33/5 34/7 36/8 36/10 36/20

**7**

**703 [1]** 2/6
**76 [1]** 4/15
**7th [5]** 13/11 14/2 17/7 17/21 17/23

**8**

**813 [1]** 1/22

**A**

**aberrant [1]** 42/4
**abide [1]** 44/2
**abiding [1]** 20/17
**ability [1]** 43/21
**able [5]** 14/11 14/25 15/1 35/2 35/3
**about [38]** 5/22 6/2 8/12 11/5 13/9 13/15 15/17 17/5 18/16 19/24 21/25 22/5 23/3 24/1 24/8 24/17 24/19 30/13 31/6 32/2 32/3 32/13 38/23 42/6 42/19 43/3 45/1 45/13 49/4 49/22 50/16 50/23 50/24 51/1 53/8 53/10 54/2 54/8
**above [1]** 56/4
**above-titled [1]** 56/4
**abuse [1]** 44/10
**accept [3]** 19/19 20/8 39/14
**acceptance [7]** 6/2 15/9 15/21 16/2 16/11 39/17 39/24
**accepted [4]** 19/14 21/10 21/11 21/15
**accepting [1]** 39/4
**accepts [1]** 15/11
**account [4]** 18/6 18/19 29/17 31/25
**Acevedo [7]** 15/17 19/18 19/20 20/7 22/6 22/19 39/21
**achieved [1]** 40/21
**acknowledge [3]** 19/17 20/12 38/13
**acknowledged [4]** 20/4 20/6 20/7 31/14
**acknowledging [1]** 19/15
**across [2]** 24/16 32/8
**act [1]** 27/16
**action [4]** 3/7 17/7 28/1 28/23
**actions [6]** 18/5 24/3 25/14 38/6 38/21 39/5
**activating [1]** 40/2
**activity [2]** 18/1 18/18
**acts [1]** 17/14
**actually [8]** 6/17 6/22 11/5 14/6 14/10 23/7 34/11 47/12
**add [1]** 17/2
**addition [3]** 9/2 15/20 42/9
**additional [2]** 19/5

**Additionally [1]** 9/16
**address [2]** 5/15 34/5
**addressing [1]** 37/4
**adjacent [1]** 44/20
**adjourned [1]** 55/4
**admitted [2]** 16/7 20/10
**adopt [1]** 51/12
**adopted [1]** 32/22
**advocate [1]** 26/19
**advocating [3]** 21/21 26/20 26/25
**affected [1]** 22/25
**affirm [1]** 10/6
**affirmatively [1]** 42/12
**afford [2]** 35/3 45/7
**after [15]** 5/3 5/25 15/7 23/24 24/13 24/14 25/4 32/17 33/8 36/12 36/24 44/13 45/4 47/19 50/7
**afternoon [9]** 3/3 3/4 3/5 3/11 3/18 3/19 3/21 3/25 4/1
**afterward [1]** 42/20
**afterwards [1]** 7/23
**again [22]** 5/17 9/12 12/3 25/3 27/11 27/14 31/24 33/12 39/3 39/15 40/3 41/14 43/3 43/8 43/9 44/16 47/15 49/21 53/15 54/7 54/14 54/18
**against [1]** 36/16
**age [5]** 24/7 32/8 32/17 33/1 43/10
**aggravated [4]** 6/3 6/21 8/2 8/13
**aggravating [3]** 6/7 36/21 37/12
**agree [5]** 9/6 9/7 9/19 12/1 49/11
**aid [1]** 50/9
**aided [1]** 2/15
**aimed [1]** 16/24
**air [1]** 20/8
**Airbnb [1]** 35/9
**Alexandria [2]** 2/4 2/6
**all [44]** 4/4 4/24 5/6 9/20 9/23 9/25 16/4 17/20 18/24 19/3 20/10 23/20 24/13 28/23 29/16 31/4 31/9 33/2 33/11 34/9 36/25 37/15 37/24 38/5 39/7 39/8 39/10 41/15 41/24 42/1 43/17 44/3 45/17 45/23 46/16 48/20 52/18 53/15 53/15 53/19 54/16 54/21 54/24 55/3
**all right [1]** 54/21
**allocution [1]** 19/9
**allow [2]** 23/11 47/18
**allowed [1]** 47/14
**alluding [1]** 29/2
**almost [4]** 10/11 11/1 14/6 15/1
**along [2]** 8/11 50/19
**already [7]** 17/3 17/19

38/14 38/17 45/18 47/13
**also [20]** 4/9 6/8 7/22 10/16 13/1 14/25 15/24 27/21 34/17 35/15 35/21 38/13 40/6 42/21 43/23 43/25 45/9 49/4 53/5 54/14
**alter [1]** 54/2
**although [1]** 34/24
**always [3]** 30/10 41/19 41/20
**am [2]** 20/1 49/4
**AMERICA [2]** 1/3 3/7
**amount [2]** 43/23 54/3
**anarchy [1]** 29/5
**anchor [2]** 52/16 52/20
**animosity [1]** 22/18
**another [5]** 23/25 24/21 25/6 28/2 34/15
**answer [1]** 16/13
**anticipate [3]** 25/20 27/8 52/22
**any [24]** 9/8 11/6 12/8 18/21 19/1 24/22 25/10 26/4 26/19 30/4 31/20 32/6 32/7 32/17 33/22 34/22 35/22 37/3 38/8 44/9 45/17 46/12 54/3 54/18
**anybody [1]** 28/13
**anymore [1]** 53/18
**anyone [3]** 25/11 28/20 40/3
**anything [14]** 4/12 5/5 5/9 9/3 10/2 15/18 18/25 23/15 32/23 33/3 37/20 39/21 51/5 53/8
**apologize [1]** 38/7
**appeal [18]** 4/19 5/3 45/2 45/4 45/6 45/7 45/8 45/14 45/25 46/7 46/11 46/14 48/5 48/18 48/23 49/22 50/7 51/23
**appealing [1]** 48/11
**APPEARANCES [2]** 1/12 1/24
**appeared [1]** 41/25
**appellate [1]** 54/3
**applicable [1]** 15/3
**application [1]** 5/23
**apply [2]** 8/9 45/9
**applying [2]** 8/1 47/18
**appointed [1]** 45/9
**appreciate [5]** 7/25 27/15 27/17 30/10 41/3
**appreciated [1]** 42/16
**appreciative [1]** 41/24
**approach [2]** 3/10 27/2
**appropriate [10]** 26/18 31/13 31/24 33/15 34/16 38/8 39/16 40/1 43/13 52/11
**appropriately [1]** 53/20
**April [4]** 1/5 13/14 14/12 56/7
**are [40]** 4/23 7/4 8/13 10/3 10/4 10/22 13/4

**A**

are... [33] 13/21 17/3 17/3 21/23 22/8 25/14 26/18 27/6 27/15 28/24 30/15 31/4 35/10 35/13 36/1 36/8 36/9 36/14 36/20 37/12 40/9 41/23 42/3 45/17 45/24 48/14 48/14 51/10 51/22 52/1 52/15 53/13 54/21
aren't [1] 37/13
argue [4] 10/13 11/10 11/12 46/18
argued [3] 10/16 48/13 50/15
arguing [3] 10/10 12/6 24/1
argument [11] 5/2 5/11 7/16 7/20 11/2 16/7 36/5 37/5 48/14 48/21 50/22
arguments [2] 26/2 46/12
arm [1] 28/6
arm's [1] 20/5
around [7] 10/3 10/24 12/5 29/14 29/23 33/7 38/24
arrest [1] 13/15
arrested [3] 10/12 10/15 17/18
arresting [1] 10/25
arrests [1] 17/21
articulate [2] 32/11 42/2
as [63]
ashamed [1] 39/5
aside [1] 51/18
ask [11] 13/17 16/12 25/23 27/3 30/1 30/2 34/3 39/1 39/5 52/6 54/25
asked [1] 43/1
asking [5] 26/3 27/6 29/21 29/22 46/6
assault [11] 6/4 6/22 8/2 8/13 15/12 15/13 15/17 24/9 24/14 24/16 30/4
assaulted [6] 19/16 19/19 20/4 20/7 22/22 23/6
assaulting [1] 19/18
assaultive [1] 9/24
assaults [4] 6/4 25/15 27/22 27/25
assert [1] 48/22
asserting [1] 48/17
assets [1] 37/24
associate [1] 32/25
assuming [1] 46/19
attachments [2] 18/4 18/20
attack [2] 22/12 22/13
attempt [2] 14/13 14/17
attempted [1] 51/3
Attorney's [1] 1/14

27/15
authorities [1] 13/13
authority [1] 41/1
Avenue [1] 2/12
aware [3] 10/12 30/15 35/10
away [6] 20/5 24/19 28/6 28/14 35/11 35/12
awful [1] 7/15

**B**

back [6] 13/23 15/25 23/24 34/8 46/18 52/23
bad [5] 11/8 24/17 26/9 26/14 35/13
Bahamas [1] 33/8
balancing [1] 27/16
ballot [1] 40/22
bar [2] 49/16 54/6
based [1] 16/17
basic [1] 35/3
basically [1] 18/21
basis [1] 50/8
battle [1] 40/24
be [53] 3/2 5/1 5/3 8/11 10/22 13/12 14/3 14/15 14/17 16/15 16/17 16/24 19/22 21/1 21/16 23/3 23/25 26/20 26/21 27/3 28/25 29/3 30/4 33/17 36/3 36/3 36/19 38/18 38/21 39/2 41/11 41/12 41/19 41/20 41/25 42/5 42/22 43/24 44/17 46/3 46/12 47/13 47/14 47/23 48/4 48/8 48/15 48/23 49/12 52/10 53/5 54/4 54/16
because [46] 5/24 7/10 7/18 8/1 10/24 13/19 17/12 18/5 18/14 21/1 21/8 21/22 22/19 23/2 23/4 23/22 24/17 24/23 25/8 25/9 25/12 25/18 26/22 26/22 27/20 27/24 29/3 30/5 32/11 33/2 36/20 38/15 40/7 40/21 43/20 46/9 46/11 47/3 47/4 48/4 50/12 50/25 51/9 53/6 53/23 54/6
becomes [1] 26/22
been [20] 10/19 12/7 12/11 23/24 25/2 25/24 25/25 26/11 31/9 33/12 34/8 34/20 34/25 35/2 42/3 42/21 44/1 47/9 47/20 48/13
before [24] 1/10 7/19 10/11 10/16 14/6 22/7 25/18 29/2 30/5 30/6 30/21 30/24 31/21 37/21 38/20 38/23 39/4 46/2 46/11 48/13 50/12 51/14 51/24 53/19
beforehand [2] 36/17 42/19

began [1] 19/5
begin [1] 46/3
beginning [2] 3/9 47/25
behalf [1] 3/22
behavior [6] 7/22 16/2 33/21 36/10 42/5 43/5
being [9] 10/14 17/18 17/20 23/25 25/16 32/24 35/3 42/1 47/19
belief [1] 16/20
beliefs [1] 32/22
believe [20] 4/18 11/4 14/5 14/11 16/20 21/1 36/11 39/15 39/17 39/25 40/6 40/7 40/11 40/14 40/14 42/5 43/12 54/11 54/15 54/17
benefit [1] 23/21
Benjamin [2] 1/13 3/12
Benjamin Smith [1] 3/12
benjamin.smith4 [1] 1/17
better [5] 25/7 38/18 38/21 38/22 38/24
bettered [1] 38/14
bettering [1] 38/23
between [11] 4/17 8/1 11/16 22/10 22/18 29/21 43/9 47/5 50/16 51/7 54/3
beyond [2] 12/17 38/20
big [4] 8/14 10/23 11/15 13/10
bit [2] 12/4 25/4
blank [4] 24/11 25/8 28/4 28/17
blessing [1] 34/24
BOASBERG [1] 1/10
bodies [2] 22/9 22/15
bodily [10] 6/8 6/23 7/8 7/8 7/11 7/24 9/9 15/16 40/8 40/15
bond [9] 4/19 5/2 37/25 45/1 45/25 46/11 48/8 48/17 49/22
BOP [1] 44/17
Borden [2] 50/22 50/23
both [5] 6/10 22/24 27/3 28/18 28/22
bottom [4] 21/17 21/19 26/6 27/4
box [1] 40/22
Boys [1] 37/12
brain [1] 38/15
breadth [2] 51/8 52/3
Brian [3] 27/20 28/13 28/24
briefed [6] 7/19 46/22 49/15 50/12 51/21 51/24
briefing [4] 4/23 5/13 50/15 51/14
briefly [4] 6/1 6/1 9/16 34/5
bring [2] 8/24 46/8
brittany [3] 2/2 2/7

begin [1] 46/3
broad [1] 51/5
broken [2] 28/3 28/14
brought [1] 26/9
brutal [1] 24/9
buckets [1] 15/19
building [3] 22/13 35/5 35/6
burden [1] 6/12
bye [1] 55/1

**C**

calculated [4] 10/5 20/14 21/12 39/14
calculation [7] 8/6 20/24 20/24 20/25 21/4 21/12 21/15
came [3] 33/11 33/19 41/25
camp [2] 44/20 44/23
can [19] 3/16 3/17 7/6 17/2 25/3 25/11 25/11 25/19 27/3 27/3 28/16 29/11 29/13 41/18 45/8 47/24 50/9 54/25 55/1
can't [7] 18/7 36/3 36/19 39/22 41/19 52/17 53/8
canister [1] 24/21
cannot [1] 6/12
capable [4] 7/15 7/18 50/18 50/20
Capitol [11] 10/3 10/18 10/23 16/1 22/12 23/18 24/18 29/8 29/10 41/11 41/17
car [1] 7/6
careers [1] 22/9
caring [1] 38/22
carrying [1] 41/3
case [36] 7/13 13/13 13/14 15/4 15/6 15/19 16/11 25/17 27/5 27/6 27/20 27/21 28/9 29/21 30/4 30/14 32/1 32/6 32/8 33/12 33/15 33/20 34/16 36/4 36/9 37/3 37/25 38/14 38/17 39/24 42/8 43/9 43/9 48/16 53/6 54/11
cases [12] 15/21 19/22 20/1 25/24 26/14 26/16 36/1 37/6 37/7 37/13 37/14 42/9
casting [1] 18/12
categorical [1] 51/10
categorically [3] 50/25 51/2 53/9
cause [6] 7/7 7/11 7/24 22/24 40/15 51/5
caused [2] 28/1 41/7
certainly [10] 11/10 20/12 28/8 30/4 36/16 39/10 42/25 51/20 52/14 52/20
certification [1] 35/23
certified [2] 2/10 41/12
certify [1] 56/2

challenges [1] 15/14
character [2] 33/23 34/7
charges [1] 6/11
chemical [1] 28/5
church [1] 35/21
circumstances [10] 13/19 16/18 32/21 35/13 49/14 49/19 49/24 51/21 51/22 53/13
cited [2] 37/5 53/19
citing [1] 47/16
civil [1] 52/12
claim [1] 24/22
clause [5] 50/25 51/1 51/9 51/10 51/11
clear [1] 53/16
clearly [1] 38/10
close [1] 43/3
closer [1] 16/5
coast [1] 33/7
cog [1] 26/22
coincidence [1] 11/11
collapsed [1] 23/12
colleague [1] 50/9
collection [1] 44/8
College [1] 41/12
Collins [2] 19/16 19/23
COLUMBIA [3] 1/1 1/14 2/12
come [3] 32/8 36/21 52/23
comes [1] 18/22
coming [1] 46/18
comments [1] 36/6
commit [5] 6/23 13/18 17/14 40/8 48/19
commits [1] 16/16
committed [5] 6/5 13/18 30/19 31/16 47/21
committing [1] 44/6
communicating [1] 27/4
community [11] 24/8 34/1 35/16 35/17 35/24 42/23 43/25 53/17 54/16 54/17 54/21
comparison [1] 27/20
complete [1] 29/5
completely [2] 23/14 38/12
compliance [2] 34/19 36/24
compliant [1] 42/22
comply [1] 35/23
component [1] 6/8
computer [1] 2/15
computer-aided [1] 2/15
concerned [1] 42/5
concluded [1] 55/5
conclusion [1] 10/6
concrete [1] 12/11
concurrent [1] 43/17
conditions [2] 44/3 44/4

**C**

conduct [23]  7/14 8/20 8/24 9/24 13/16 16/8 16/9 19/4 25/24 26/11 27/23 29/15 29/19 30/14 31/7 31/17 32/3 33/15 34/16 36/4 36/7 40/3 51/11
confederate [1]  40/24
confined [1]  33/13
conflating [2]  19/22 20/1
consciousness [1]  23/12
consequences [1]  31/10
consider [3]  30/16 34/13 53/20
considerably [1]  28/9
consideration [2]  31/20 53/1
considerations [1]  32/4
considered [1]  40/16
consistent [1]  26/21
consistently [1]  27/1
constitute [1]  53/9
constitutes [3]  15/15 49/18 54/9
Constitution [1]  2/12
construction [2]  31/1 51/16
contacted [1]  12/20
contemplate [1]  13/14
content [2]  18/14 18/22
contest [2]  39/22 41/1
contested [3]  15/18 20/9 39/23
contesting [1]  39/20
continue [3]  47/19 54/19 54/20
continued [3]  2/1 35/20 42/22
continuing [1]  48/8
contradicted [1]  32/23
contributor [1]  42/23
controlled [1]  44/7
convicted [4]  31/9 37/11 47/11 47/20
conviction [4]  45/3 48/11 50/7 52/12
cooperate [1]  44/8
core [1]  26/17
cornered [1]  23/10
correct [8]  11/18 12/1 18/25 40/7 40/14 41/22 52/12 56/3
correctly [1]  20/14
cost [2]  45/7 45/9
could [19]  12/8 12/17 15/25 23/3 23/3 23/5 23/15 28/19 34/8 35/19 38/11 40/4 48/22 50/11 51/5 52/14 52/20 53/2 53/5
couldn't [1]  16/8
counsel [4]  3/9 26/1

Count [3]  9/21 9/22 43/15
Count 1 [2]  9/21 43/15
Count 3 [1]  9/22
counted [1]  41/11
country [3]  25/13 40/20 41/20
counts [9]  9/20 10/4 43/16 43/16 43/17 43/18 43/19 53/5 53/10
Counts 7 [1]  43/16
couple [2]  48/10 50/11
course [8]  9/22 10/4 16/7 31/10 31/19 34/25 39/21 52/23
court [44]  1/1 2/9 2/11 2/11 5/10 7/19 8/8 10/6 10/17 15/24 21/10 21/14 25/1 25/17 27/8 30/1 30/14 30/16 31/14 31/18 31/23 32/11 33/19 34/4 34/5 34/10 34/13 34/21 35/6 35/10 37/16 37/23 45/8 45/9 47/1 47/1 47/16 48/13 50/3 50/19 51/19 52/17 53/2 55/4
Court's [9]  7/25 13/9 25/6 36/6 51/15 52/3 52/3 52/14 53/1
court-appointed [1]  45/9
courtroom [1]  31/5
coverage [1]  14/1
covered [1]  18/24
CR [1]  1/4
crashing [1]  33/11
created [1]  47/15
credit [1]  43/2
crime [16]  13/18 13/18 16/17 22/3 49/9 49/22 49/23 50/6 50/15 51/17 51/19 52/2 52/7 53/3 53/5 53/24
crimes [9]  1/20 44/6 47/11 47/12 47/20 47/21 48/19 53/6 53/9
criminal [3]  1/19 3/6 20/16
crop [3]  25/6 28/6 29/1
crop-dusting [2]  28/6 29/1
crop-dusts [1]  25/6
crowd [3]  23/13 23/16 23/25
crowd's [1]  23/15
CRR [2]  56/2 56/8
cruel [1]  24/9
currently [1]  48/12
custody [4]  46/3 47/10 47/13 47/25
Cystal [1]  2/8

**D**

D.C [3]  1/5 1/16 2/13
dad [1]  32/18
dance [1]  12/5

danger [1]  53/23
dangerous [12]  6/22 7/5 9/25 15/16 34/12 48/20 50/17 50/19 51/4 51/12 52/11 54/1
dare [1]  22/20
data [1]  18/5
Date [1]  56/7
davidson [13]  2/2 2/7 3/22 5/9 17/4 17/25 18/24 21/24 30/11 41/22 44/14 45/21 49/21
day [17]  5/25 8/21 8/23 9/10 10/18 12/9 12/23 17/23 19/16 29/17 34/16 37/17 38/6 40/5 41/15 41/16 42/6
days [3]  44/13 45/4 45/5
deact [1]  11/17
deactivated [2]  11/3 11/14
deactivates [1]  29/17
deactivating [2]  13/3 40/2
deactivation [4]  11/19 14/10 15/7 17/24
deactivation/reactivation [2]  14/10 15/7
deadly [2]  15/15 48/20
dealing [1]  13/1
dealings [1]  26/1
decade [3]  8/14 31/6 37/2
December [1]  13/15
decide [2]  48/16 53/2
decision [5]  33/16 36/25 38/11 47/5 54/3
dedicated [1]  22/8
deeply [1]  39/5
defend [1]  25/13
defendant [19]  1/7 2/2 4/17 17/7 17/23 22/16 22/22 23/8 23/21 24/4 31/19 43/16 43/20 46/3 47/9 48/17 48/22 53/16 54/6
defendant's [4]  24/1 29/24 32/2 43/10
defendants [6]  26/10 26/23 28/18 31/15 37/10 48/14
DEFENDER [1]  2/3
defense [10]  4/10 4/11 4/19 16/10 19/12 29/21 39/12 39/20 44/1 53/25
definition [4]  50/17 51/4 51/9 51/9
degree [1]  32/12
delete [3]  18/6 18/7 40/2
deleted [9]  11/16 11/23 11/25 12/2 12/6 12/12 12/15 18/22 29/18
deleting [1]  12/22
deletion [1]  11/20
deliberate [2]  24/10

democracy [1]  22/13
demonstrated [1]  15/23
denied [2]  21/10 46/12
deny [2]  4/22 16/8
Department [1]  27/15
departure [2]  33/14 34/11
deploying [1]  28/4
deployment [1]  24/11
deputies [1]  54/24
described [2]  32/24 34/1
describing [2]  41/7 42/2
deserve [2]  25/14 38/8
deserves [1]  42/6
destroy [1]  13/21
destroys [1]  16/18
destruction [1]  10/11
detain [1]  54/13
detained [1]  4/17
detention [5]  5/1 46/7 46/23 53/22 54/11
determination [1]  21/15
deterrence [2]  49/3 49/4
deterrent [1]  49/5
deviation [1]  33/23
dice [1]  26/23
did [26]  5/13 6/9 9/16 13/13 13/14 14/9 14/10 15/8 15/19 18/13 19/3 20/1 21/6 21/14 22/23 22/24 24/12 24/18 31/25 33/21 41/5 42/6 46/25 47/1 47/1 50/2
didn't [22]  4/25 7/24 8/24 10/24 14/21 17/12 17/13 17/14 20/8 22/17 23/19 24/2 24/22 32/25 32/25 33/1 38/7 41/2 42/20 47/3 48/19 53/20
difference [5]  7/3 8/1 8/14 11/15 28/20
different [10]  6/18 6/24 7/9 7/17 13/5 36/17 37/11 38/3 38/4 42/8
differently [1]  38/12
differs [1]  21/4
difficult [2]  32/11 35/1
diminished [1]  29/3
direct [1]  28/1
directly [1]  20/6
discretionary [1]  44/3
discuss [1]  5/3
disorder [1]  52/12
disoriented [1]  23/4
disparities [1]  36/1
disputes [1]  39/15
disputing [1]  31/8
distance [2]  8/25 29/3
distinguisher [1]  43/9
DISTRICT [7]  1/1 1/1 1/10 1/14 2/4 2/11 2/12
Division [1]  1/19

DNA [1]  44/8
do [38]  4/14 6/11 7/9 11/4 11/14 11/15 13/10 14/2 14/4 14/15 15/2 16/13 16/20 19/12 21/22 24/23 25/3 27/9 27/19 27/23 28/24 30/3 34/12 38/12 38/23 39/1 40/14 40/14 44/14 45/2 45/10 45/13 45/15 46/18 48/24 50/1 53/23 54/20
do you [1]  44/14
Do you understand [1]  45/13
does [8]  16/24 17/24 19/17 19/19 25/4 35/23 43/21 44/20
doesn't [6]  6/14 31/19 34/3 49/8 49/9 50/6
doing [6]  10/13 24/14 41/8 41/10 41/17 54/16
DOJ [2]  1/13 1/19
DOJ-USAO [2]  1/13 1/19
don't [44]  7/11 8/19 9/9 9/13 11/6 11/12 11/22 12/1 12/5 12/13 13/3 13/6 14/21 16/10 18/11 23/21 25/21 26/13 26/14 26/15 27/5 27/8 28/13 29/2 29/20 36/15 37/1 38/8 39/17 40/23 42/5 44/10 46/18 48/10 48/21 49/21 49/22 52/22 53/16 53/24 54/1 54/5 54/6 54/17
done [2]  29/8 42/10
double [1]  47/17
double-down [1]  47/17
doubt [1]  31/7
down [6]  21/17 21/18 33/11 38/15 45/11 47/17
downward [7]  25/20 25/21 26/16 27/8 30/2 33/14 34/14
drastic [2]  8/2 33/16
draw [1]  26/24
driving [1]  7/6
during [1]  18/1
dusting [2]  28/6 29/1
dusts [1]  25/6

**E**

each [2]  18/24 43/15
eager [1]  25/3
earlier [2]  39/19 47/4
early [1]  17/16
EASTERDAY [17]  1/6 3/8 3/23 3/25 19/14 22/1 24/11 24/15 28/23 29/7 37/20 40/18 45/3 49/5 53/21 54/13 55/1
Easterday's [3]  27/23 28/16 36/17
Eastern [1]  2/4
easy [1]  6/25

Case 1:22-cr-00404-JEB Document 120 Filed 05/08/24 Page 62 of 66

**E**

education [1] 32/17
effort [1] 40/19
egregious [5] 8/13 31/17 36/9 37/11 41/5
either [3] 6/10 29/4 53/2
Electoral [1] 41/11
element [1] 17/1
eligible [1] 34/11
eliminate [1] 31/20
else [5] 5/18 7/1 12/21 18/25 24/21
Email [3] 1/17 1/23 2/7
emotional [1] 41/14
emphasize [7] 15/9 17/4 30/20 33/21 34/6 34/23 50/1
encompass [1] 53/7
end [5] 4/16 21/13 21/21 25/16 46/18
ended [1] 47/9
enemies [1] 22/17
engaged [1] 10/10
enhancement [5] 8/9 14/6 15/3 21/3 39/25
enjoy [1] 35/4
enormous [2] 20/15 20/18
enough [7] 11/13 13/11 14/2 14/13 15/17 26/6 31/1
ensure [1] 35/23
enters [1] 29/7
entire [1] 30/23
entry [2] 44/12 45/4
equates [1] 31/13
equivalent [1] 28/17
erase [1] 31/19
erases [1] 22/3
error [1] 47/18
escape [1] 24/18
especially [4] 10/23 13/12 15/22 32/1
essentially [8] 9/20 23/9 23/11 24/15 47/14 47/23 48/5 53/23
even [29] 6/5 10/11 10/24 10/25 11/13 11/22 12/5 13/9 13/14 20/8 21/10 21/13 33/1 33/14 33/15 34/10 37/7 37/9 39/20 40/23 41/2 46/2 46/12 49/8 51/18 52/6 52/9 52/11 53/24
evening [1] 17/16
ever [5] 13/21 16/17 29/20 33/3 38/11
every [3] 8/8 34/21 48/22
everybody [1] 17/16
everyone [3] 3/2 3/3 3/5
everything [1] 50/5
everywhere [1] 17/22
evidence [7] 9/8 9/15 10/11 11/6 13/22 15/17 16/18

**F**

face [5] 6/15 7/2 20/6 33/19 41/13
Facebook [8] 11/4 11/5 11/16 17/6 18/1 18/4 18/6 29/17
Facebook's [2] 18/8 18/17
facility [3] 44/14 44/18 44/19
fact [9] 7/12 8/22 9/7 20/10 23/19 36/11 41/24 42/18 42/20
factor [2] 6/7 42/15
factors [6] 21/23 30/15 36/8 36/21 37/13 40/16
facts [6] 7/13 7/21 15/18 17/2 17/3 20/10
fainted [1] 23/12
fair [2] 25/25 46/17
fall [1] 15/19
falls [1] 51/11
family [12] 15/24 24/7 30/21 30/22 32/13 32/19 33/13 33/25 34/25 38/10 41/24 55/1
Fanone [1] 23/23
far [4] 28/7 31/16 38/18 38/21
far-right [1] 31/16
farm [5] 30/21 30/22 32/19 33/5 33/13
fashions [1] 44/1
fast [1] 7/6
fault [1] 24/1
FBI [1] 17/19
FCI [3] 44/17 44/19 44/23

exacerbate [1] 29/6
exactly [2] 25/2 54/20
example [3] 38/22 51/6 52/12
examples [1] 12/11
exceptional [9] 49/14 49/18 49/24 50/8 51/20 51/22 53/13 54/5 54/9
excuse [1] 38/6
exemplary [1] 25/25
exhibited [1] 15/23
exist [1] 54/5
expect [1] 21/24
expected [1] 49/1
experience [2] 33/10 35/8
experienced [1] 33/3
experts [1] 23/3
explain [1] 26/7
express [1] 38/13
extensively [3] 7/19 10/16 49/15
extent [4] 10/2 29/13 29/15 32/20
extraordinarily [1] 32/5
extremely [2] 38/2 54/7
extricates [1] 24/17
eyes [2] 28/5 38/4

FCI Manchester [1] 44/23
fd.org [1] 2/7
federal [10] 2/3 10/12 13/13 14/4 14/18 16/21 16/25 17/12 17/17 44/6
feel [1] 34/15
feels [2] 24/17 38/9
feet [3] 28/14 35/11 35/12
fell [1] 23/12
felonies [4] 9/23 31/9 37/10 37/11
felony [2] 15/12 15/13
few [7] 5/14 5/21 8/12 20/12 26/10 32/15 37/6
figuring [2] 25/5 54/20
file [1] 45/8
filed [2] 4/18 5/25
filing [1] 45/5
films [1] 29/14
finally [1] 33/7
financial [2] 35/13 44/9
find [12] 6/25 8/8 15/13 34/10 40/10 43/21 49/23 51/19 51/20 52/6 53/23 54/5
fine [1] 43/20
firearm [1] 7/5
first [15] 4/22 14/20 15/11 17/21 23/9 26/13 28/5 30/18 37/23 46/11 46/22 48/11 50/14 53/15 53/18
fits [1] 50/25
FL [1] 1/22
flag [1] 40/24
flagpole [2] 28/3 28/14
flight [1] 53/17
fly [1] 6/14
focus [4] 7/21 31/18 31/21 31/23
focused [1] 36/19
focuses [1] 22/3
focusing [1] 22/1
follow [2] 5/14 50/6
following [2] 44/3 53/19
food [1] 35/20
footage [1] 38/3
force [8] 40/20 40/22 50/25 51/1 51/3 51/9 51/10 51/11
foregoing [1] 56/3
forgiveness [1] 39/6
formally [1] 43/14
founded [1] 48/21
four [2] 27/24 47/12
fourth [1] 28/3
frame [1] 15/6
framed [1] 25/1
frankly [1] 29/6
freedom [1] 26/19
freeze [1] 25/1
freeze-framed [1] 25/1
full [2] 4/23 38/16
fully [2] 41/2 42/16
further [1] 47/15

future [3] 41/6 42/6

**G**

gap [1] 29/21
gave [1] 36/13
general [4] 26/17 49/3 49/5 53/8
generally [3] 20/17 26/23 26/25
generous [1] 34/1
genre [1] 12/14
geofence [1] 13/24
Geremy [2] 2/2 3/22
Geremy Kamens [1] 3/22
get [10] 4/23 7/12 7/19 10/24 15/9 16/10 16/15 35/8 41/13 46/12
gets [1] 24/25
getting [3] 13/8 14/8 23/10
girlfriend [1] 33/6
give [2] 9/8 42/24
given [16] 4/22 12/14 13/12 13/19 15/22 16/1 26/4 32/8 34/11 34/16 40/1 51/15 52/2 52/11 52/15 54/2
glorifying [1] 42/20
go [11] 15/25 16/6 25/19 31/1 31/1 32/18 32/25 34/8 38/25 40/22 42/20
goes [4] 13/23 17/10 29/16 50/19
going [21] 13/12 20/20 20/22 24/22 25/19 28/21 30/2 33/17 34/4 37/1 37/2 39/13 42/16 42/24 44/9 44/22 48/23 54/13 54/14 54/17 54/20
gone [3] 15/25 18/14 34/9
good [17] 3/3 3/4 3/5 3/11 3/18 3/19 3/21 3/25 4/1 14/24 18/13 24/8 42/9 43/2 54/15 54/19 54/22
good-time [1] 43/2
Gordon [13] 1/18 3/14 3/16 4/12 5/5 16/12 19/8 19/22 25/23 30/9 41/6 45/19 45/24
Gordon's [1] 36/5
got [5] 21/7 23/16 28/19 33/7 33/10
gotten [1] 34/22
government [33] 1/13 3/9 4/8 5/6 6/9 9/14 10/10 11/4 12/6 16/12 18/2 18/16 19/8 20/13 21/8 22/14 26/25 27/7 29/22 30/13 37/9 39/11 39/18 40/17 41/2 42/19 42/25 43/7 45/6 47/15 49/2 53/4 53/18

government's [17] 4/16 5/24 9/17 10/20 21/4 21/11 21/17 26/17 29/23 31/12 37/5 45/24 50/16 50/19 51/8 51/12 51/16
grant [1] 48/7
granting [1] 48/4
great [1] 50/4
grew [1] 30/25
grounded [1] 48/18
group [5] 9/21 9/25 25/6 28/6 28/15
grouping [8] 9/18 9/19 10/7 21/1 21/2 21/9 21/11 39/15
groups [1] 39/16
grow [1] 29/10
guess [2] 12/19 25/7
Guideline [10] 6/4 6/6 6/13 6/21 8/3 8/5 8/9 8/15 8/17 26/25
Guidelines [26] 8/6 8/10 8/12 9/23 10/5 19/5 20/13 20/23 20/25 21/12 21/13 21/18 21/22 25/16 26/7 26/18 26/21 27/4 27/6 27/7 31/13 36/2 39/13 39/14 40/9 52/15
Guidelines Range [2] 8/6 21/22
Guidelines sentence [2] 26/21 27/7
Guidelines sentences [1] 26/18
guilt [1] 39/20
guilty [1] 15/13
guns [3] 26/9 26/9 53/8

**H**

had [29] 12/19 13/11 14/2 14/5 17/19 18/22 19/16 20/4 23/17 23/24 24/6 24/23 25/18 26/10 27/21 27/24 28/18 29/20 30/6 30/7 30/8 31/1 32/5 32/20 37/10 38/1 38/15 40/20 42/20
hadn't [1] 40/21
half [1] 42/25
handed [2] 8/25 25/2
handled [1] 27/16
hands [1] 24/21
happen [7] 23/3 23/11 23/17 23/19 24/2 26/24 52/22
happened [20] 8/23 9/10 11/5 12/25 13/5 15/7 16/1 17/21 23/7 23/15 23/22 23/23 24/6 33/5 34/6 36/12 36/20 40/4 41/16 42/21
happening [1] 48/15
happy [3] 5/14 5/16 5/19
hard [2] 35/5 39/10
hardworking [1] 34/2

**H**

**harm [2]** 23/21 51/5
**harmful [1]** 7/10
**has [27]** 9/14 14/17 15/23 15/24 16/15 19/18 20/6 25/24 26/11 30/3 30/8 30/16 31/9 32/24 34/8 34/20 34/25 35/2 35/2 36/3 38/14 38/17 38/19 43/5 46/15 51/20 53/25
**hasn't [1]** 34/22
**have [62]**
**having [4]** 35/17 47/20 47/21 48/18
**he [127]**
**he didn't [7]** 7/24 8/24 17/12 17/14 32/25 32/25 33/1
**he said [1]** 12/9
**he'd [2]** 12/19 36/16
**he'll [1]** 16/17
**he's [22]** 20/7 24/18 24/19 24/19 25/2 25/3 25/10 25/11 29/8 29/8 29/9 29/12 31/3 33/12 34/1 34/10 34/19 34/20 35/5 35/20 37/1 48/11
**head [1]** 42/12
**health [1]** 54/8
**hear [9]** 3/16 5/2 5/11 5/16 5/19 19/8 22/5 23/3 32/13
**heard [3]** 22/24 39/11 41/15
**Hearing [1]** 44/12
**heightened [3]** 6/6 6/13 8/17
**help [1]** 54/21
**helped [1]** 38/17
**helpful [2]** 18/12 20/18
**helps [1]** 34/2
**her [1]** 17/11
**here [35]** 3/6 4/2 4/23 6/11 6/21 7/20 7/21 8/19 9/14 21/23 22/16 24/1 25/19 26/3 26/15 26/18 29/15 29/19 31/5 31/21 36/7 37/13 38/9 39/4 41/25 41/25 42/1 43/5 43/8 48/15 49/12 52/2 53/13 54/9 54/12
**heros [1]** 22/16
**hey [3]** 18/17 48/15 48/22
**high [4]** 25/17 27/6 49/16 54/7
**higher [5]** 9/12 21/1 28/25 30/4 37/14
**him [21]** 8/24 10/2 10/24 11/1 13/15 15/13 20/5 23/15 24/6 24/21 31/24 34/17 35/1 35/3 35/10 35/17 36/16 37/2 47/18 47/25 48/4
**himself [1]** 23/9
**hire [1]** 6/5
**his [63]**

**hit [2]** 28/19 38/4
**hold [1]** 36/15
**home [1]** 29/16
**homeschooled [1]** 32/16
**homeschooling [1]** 32/21
**Honor [60]**
**HONORABLE [2]** 1/10 55/4
**hope [1]** 54/18
**horrible [3]** 23/17 25/14 33/16
**hours [3]** 35/17 35/21 43/25
**house [4]** 33/9 35/6 35/9 35/12
**how [10]** 12/17 22/25 24/1 25/5 28/20 35/13 36/25 38/13 38/18 40/23
**humbly [1]** 39/1
**hurt [4]** 24/12 25/11 28/19 29/5
**hurt's [1]** 29/5
**husband [1]** 38/22
**hypothetical [2]** 16/14 16/16

**I**

**I also [2]** 40/6 49/4
**I am [1]** 20/1
**I appreciate [1]** 30/10
**I believe [10]** 4/18 14/11 36/11 39/15 39/25 40/7 40/11 43/12 54/11 54/15
**I can [3]** 3/17 25/19 27/3
**I did [1]** 15/8
**I don't [27]** 7/11 9/9 11/12 11/22 12/5 13/3 13/6 14/21 23/21 26/13 26/14 26/15 27/5 28/13 29/20 38/8 39/17 40/23 42/5 44/10 48/10 48/21 53/16 53/24 54/1 54/6 54/17
**I expect [1]** 21/24
**I find [1]** 43/21
**I guess [1]** 25/7
**I have [5]** 12/3 20/2 25/18 39/7 50/4
**I just [5]** 6/19 16/10 30/20 32/3 54/18
**I know [3]** 7/18 30/2 44/16
**I mean [8]** 5/17 7/1 11/9 12/14 12/19 13/4 16/5 30/22
**I should [2]** 42/5 48/23
**I think [88]**
**I thought [1]** 38/20
**I understand [3]** 14/23 25/17 36/5
**I was [1]** 29/2
**I will [7]** 4/22 19/8

44/12 45/11
**I wouldn't [2]** 11/12 21/19
**I'd [3]** 37/25 38/7 38/13
**I'll [4]** 5/2 5/3 21/14 43/25
**I'm [34]** 3/13 5/5 5/10 5/16 5/19 11/17 12/4 14/16 17/11 19/25 20/20 20/22 20/22 21/21 23/22 25/22 26/22 27/6 35/12 38/2 38/4 39/4 39/13 40/13 41/24 42/24 44/9 44/22 46/6 48/1 48/23 54/13 54/14 54/17
**I'm going [8]** 20/20 20/22 39/13 42/24 48/23 54/13 54/14 54/17
**I'm not [1]** 12/4
**I'm not sure [1]** 5/10
**I'm sorry [7]** 5/5 17/11 19/25 25/22 35/12 40/13 48/1
**I'm sure [1]** 23/22
**I've [11]** 4/4 4/7 4/9 25/18 25/22 26/4 29/20 38/1 40/16 41/15 48/25
**idea [3]** 20/10 35/16 48/19
**identical [1]** 51/23
**identified [2]** 17/18 17/20
**images [1]** 12/23
**immediate [1]** 27/19
**immediately [1]** 46/4
**impact [2]** 52/14 52/21
**impacted [1]** 23/8
**impeding [1]** 8/4
**important [4]** 7/20 8/1 21/23 35/25
**impose [5]** 37/16 37/21 43/14 43/20 44/9
**imposed [2]** 45/18 52/19
**imposing [1]** 30/16
**improperly [1]** 47/18
**incarcerating [1]** 31/6
**incarceration [1]** 33/18
**include [1]** 44/5
**includes [1]** 51/6
**including [4]** 18/3 19/17 50/17 51/11
**incorporate [1]** 19/6
**incredibly [2]** 33/16 49/16
**incriminating [4]** 12/22 13/7 13/22 40/3
**indicate [2]** 9/3 9/4
**indicated [1]** 36/25
**indiscriminate [1]** 25/9
**individual [1]** 7/7
**individualized [1]** 36/3
**infer [4]** 7/7 12/21 12/25 40/3
**inference [8]** 11/9 11/9

18/22 40/1
**inflict [3]** 9/9 25/11 28/21
**infliction [1]** 28/11
**information [2]** 13/7 14/3
**inherently [1]** 7/4
**injuries [4]** 28/8 41/14 41/15 41/18
**injury [15]** 6/8 6/23 7/8 7/8 7/11 7/24 9/9 15/16 22/24 23/1 28/1 40/8 40/15 41/8 41/20
**inquiry [1]** 51/10
**instead [2]** 26/24 48/17
**insulate [1]** 52/17
**intended [1]** 9/9
**intending [1]** 7/7
**intent [19]** 6/8 6/10 6/20 6/23 7/21 7/24 8/16 8/19 8/21 9/13 14/4 14/5 28/22 29/4 40/7 40/15 40/19 50/23 51/1
**intentionally [1]** 41/7
**interacted [1]** 31/4
**interrupt [3]** 20/20 20/22 49/7
**interview [1]** 36/13
**invasion [1]** 29/10
**investigated [2]** 10/14 13/12
**investigating [1]** 10/24
**investigation [11]** 4/5 10/12 14/4 14/11 14/18 16/15 16/21 16/25 17/12 17/13 17/17
**involve [2]** 6/4 33/22
**involved [3]** 26/10 27/21 37/24
**involving [1]** 37/6
**is [185]**
**is that right [1]** 42/11
**is there [1]** 15/16
**isn't [5]** 6/25 7/16 9/2 11/9 46/14
**isolation [1]** 32/12
**ISRAEL [24]** 1/6 3/8 3/23 10/10 10/20 11/3 14/2 14/5 15/2 15/9 15/22 24/15 28/16 28/22 30/17 31/6 31/14 31/22 32/5 32/24 33/25 36/9 36/23 50/3
**Israel Easterday [2]** 3/8 3/23
**Israel Easterday's [1]** 28/16
**Israel's [4]** 6/10 8/21 33/2 36/7
**Isreal [1]** 33/18
**issue [11]** 17/5 26/15 26/17 46/2 47/1 48/3 48/12 48/15 50/14 51/18 52/17
**issues [7]** 18/25 19/1 46/10 51/24 52/1 52/18

**issuing [2]** 34/14 36/22
**it [97]**
**it'd [1]** 48/8
**it's [47]** 6/17 7/9 7/10 7/17 7/20 8/15 11/8 12/5 13/19 15/3 15/6 15/19 16/5 16/6 16/17 16/22 19/15 19/23 23/20 24/2 24/2 25/8 25/9 26/6 26/6 26/14 26/23 27/8 30/5 30/6 32/7 32/11 35/25 36/15 43/1 43/1 43/3 43/12 43/13 44/17 44/19 48/7 48/10 48/13 49/9 49/23 51/21
**its [2]** 17/19 25/10
**itself [6]** 8/15 8/20 11/3 17/17 18/19 52/17

**J**

**jail [2]** 35/18 47/23
**JAMES [1]** 1/10
**January [31]** 7/22 8/21 9/4 11/7 11/20 13/11 13/25 14/2 17/7 17/17 17/21 17/23 22/2 22/11 23/7 26/4 30/19 30/24 31/7 31/15 31/21 31/25 32/7 33/5 34/7 36/8 36/10 36/20 36/23 36/24 40/19
**January 6th [25]** 7/22 8/21 9/4 11/7 11/20 13/25 17/17 22/2 22/11 26/4 30/19 30/24 31/7 31/15 31/21 31/25 32/7 33/5 34/7 36/8 36/10 36/20 36/23 36/24 40/19
**job [3]** 41/8 41/10 41/17
**Joel [1]** 1/13
**joined [1]** 3/13
**JUDGE [1]** 1/10
**judges [1]** 30/7
**judgment [1]** 45/5
**jurors [1]** 25/1
**jury [1]** 15/12
**just [68]**
**justice [3]** 9/18 10/9 27/15

**K**

**Kamens [4]** 2/2 3/22 21/24 40/13
**keep [2]** 21/19 23/9
**keeps [1]** 18/6
**Kentucky [2]** 44/19 44/23
**key [1]** 17/24
**Khater [1]** 37/8
**kicked [1]** 28/1
**kids [1]** 32/21
**kind [4]** 6/19 24/7 34/1 54/11
**kinds [1]** 18/5

**K**

King [1]  2/5
knew [2]  17/16 24/12
knife [1]  7/5
know [50]  7/18 11/22
12/1 12/5 12/13 12/17
13/11 13/18 14/3 15/16
16/21 17/12 18/11
18/19 22/2 22/17 23/2
23/2 24/10 24/13 24/22
27/24 27/25 28/2 28/12
28/14 28/18 28/19
28/20 29/1 29/3 29/10
29/12 29/20 29/20 30/1
30/2 33/17 36/6 38/8
40/23 41/6 44/16 46/22
46/23 47/12 47/23
48/25 49/3 50/4
knowledge [4]  13/11
14/17 16/14 17/1
known [1]  10/21
knows [4]  8/22 16/16
25/2 33/18

**L**

lack [2]  9/6 43/10
laid [1]  20/13
large [1]  29/22
largely [1]  54/10
last [3]  15/8 35/25
36/15
lasting [1]  31/10
later [6]  10/25 11/1
17/6 17/13 17/14 29/14
law [6]  20/17 46/15
47/8 47/16 47/18 53/1
law-abiding [1]  20/17
lawful [1]  41/1
lawmakers [1]  22/13
lay [1]  12/22
leaders [1]  31/15
leading [2]  36/10 36/23
leap [2]  10/23 13/10
learned [1]  38/21
least [2]  12/11 52/25
leave [5]  4/25 30/21
30/22 30/24 53/1
leaves [1]  29/14
lectern [1]  3/10
led [1]  20/17
left [2]  19/12 32/19
legal [4]  15/15 15/19
48/8 52/18
legal-related [1]  15/15
legally [1]  46/9
length [2]  20/5 28/6
less [3]  7/10 40/19
42/25
lessened [1]  49/6
let [10]  8/10 13/17
16/12 25/23 43/13
45/11 49/7 52/6 53/15
54/14
let's [1]  27/12
letter [3]  14/12 15/23
17/6
letters [3]  4/9 33/25
42/3

letting [2]  31/11 44/16
level [4]  8/16 9/12
15/10 15/22
life [16]  9/8 20/18 22/2
22/14 24/6 30/23 31/3
31/11 32/14 32/24 33/4
35/9 37/1 38/11 38/11
38/14
light [1]  18/13
like [19]  5/11 7/5 7/5
7/15 22/6 23/22 24/15
32/12 32/14 33/4 34/15
34/23 35/16 37/23
37/25 38/7 38/9 38/13
51/6
likelihood [1]  16/23
likely [9]  7/16 7/18
11/9 11/10 14/3 16/15
25/20 50/18 50/21
line [4]  16/5 22/10 30/3
43/5
lines [1]  8/11
listen [1]  33/1
literal [1]  22/15
little [4]  10/18 12/4
25/4 25/17
live [1]  48/12
lives [2]  22/6 22/8
living [1]  35/10
local [3]  31/2 35/18
44/6
location [1]  13/20
locations [1]  23/18
logical [2]  18/12 40/1
logs [1]  29/17
long [1]  41/25
longer [3]  34/18 35/14
37/17
look [7]  7/13 7/21 8/19
8/20 9/7 28/13 33/4
looks [1]  32/12
looming [1]  14/18
lost [2]  23/12 26/9
lot [16]  4/25 8/5 13/4
13/5 13/25 13/25 23/6
29/18 30/15 33/25 34/2
37/12 42/9 43/1 48/14
54/15
love [1]  38/25
low [4]  21/13 21/21
44/18 44/23
low-security [1]  44/18
lower [3]  8/3 8/5 54/4
luck [3]  23/20 24/2
54/22
ludicrous [1]  24/23
Lustig [3]  2/8 4/5 50/5

**M**

machine [1]  26/22
made [2]  33/17 38/11
mainly [2]  30/25 31/3
mainstream [1]  33/2
maintained [1]  34/19
majority [1]  31/3
make [5]  21/14 25/5
29/9 50/11 53/16
makes [1]  9/25

man [1]  34/2
Manchester [2]  44/19
44/23
mandated [2]  53/23
54/11
mandatory [1]  44/3
manhours [1]  37/24
many [7]  16/6 20/2
25/24 33/4 38/17 38/17
41/16
materials [1]  4/24
matter [5]  46/13 48/7
49/10 53/8 56/4
matters [2]  5/6 42/17
Matthew [1]  1/18
may [9]  13/20 19/21
19/22 39/9 42/16 45/4
45/8 45/9 55/2
maybe [4]  18/10 23/25
35/8 36/7
McHugh [1]  37/7
me [21]  3/16 8/10
11/18 13/17 16/12 20/1
25/23 26/8 26/11 37/25
38/17 38/19 38/24 39/1
42/14 42/23 43/13 49/7
52/6 53/15 54/14
mean [11]  5/17 7/1 8/3
11/9 12/14 12/19 13/4
16/5 30/22 46/6 50/1
means [4]  33/25 40/25
41/1 51/16
meant [3]  6/4 40/11
40/25
measured [1]  27/2
mechanical [1]  2/15
media [3]  36/16 42/18
43/11
medium [1]  44/19
meet [1]  6/12
melees [1]  26/10
members [4]  32/13
35/16 37/11 41/24
memo [4]  17/3 19/6
19/17 20/14
memoranda [1]  5/25
memorandum [3]  4/7
4/9 5/18
mentioned [1]  6/19
mercy [2]  23/15 39/6
merely [1]  50/18
Merit [1]  2/10
merits [1]  46/12
messages [2]  18/3
18/4
met [2]  9/14 33/6
Meta [2]  14/12 15/1
Michael [1]  1/18
michael.gordon3 [1]
1/23
might [4]  10/22 24/8
26/20 48/15
Mike [1]  3/14
military [1]  41/9
mill [1]  54/10
mind [1]  38/19
minimize [1]  31/8

minimum [1]  42/6
ministry [1]  35/20
minutes [2]  29/14
33/22
mischaracterized [1]
36/12
misdemeanors [1]
10/4
mishear [1]  20/1
misheard [1]  19/21
mismatch [1]  51/7
miss [1]  47/1
missed [1]  46/25
missing [1]  17/25
misspoke [1]  53/4
misunderstanding [1]
11/18
mitigating [1]  21/22
mob [3]  22/21 29/10
40/21
Mock [6]  27/20 27/24
28/24 36/6 43/7 43/9
Mock's [3]  27/24 28/13
36/10
mom [1]  32/16
moment [3]  23/14 45/1
47/9
moments [1]  47/8
money [1]  31/1
month [1]  43/24
months [7]  20/15
34/15 37/16 40/10
42/24 43/16 43/17
moot [3]  4/22 5/1 47/4
more [24]  8/13 8/14
8/19 10/17 10/25 12/11
15/14 16/9 26/4 26/8
30/3 31/6 31/16 31/25
34/19 36/7 36/9 37/2
37/11 38/18 38/22
39/19 43/3 50/24
most [7]  11/9 11/10
18/11 27/19 31/14
38/10 42/15
motion [8]  4/15 4/16
4/18 10/17 46/14 46/19
46/23 49/21
motions [2]  4/24 47/6
motivated [1]  38/19
move [3]  21/16 21/18
52/20
moves [1]  48/2
moving [1]  24/19
Mr. [34]  3/16 3/25 4/12
5/5 16/12 19/8 19/14
19/22 21/24 22/1 24/11
24/12 25/23 27/23
27/24 27/24 29/7 30/9
36/5 36/6 36/10 36/17
37/20 40/13 40/18 41/6
43/7 45/3 45/19 45/24
49/5 53/21 54/13 55/1
Mr. Easterday [12]
3/25 19/14 22/1 24/11
29/7 37/20 40/18 45/3
49/5 53/21 54/13 55/1
Mr. Easterday's [2]
27/23 36/17

Mr. Gordon [11]  3/16
4/12 5/5 16/12 19/8
19/22 25/23 30/9 41/6
45/19 45/24
Mr. Gordon's [1]  36/5
Mr. Kamens [2]  21/24
40/13
Mr. Mock [3]  27/24
36/6 43/7
Mr. Mock's [2]  27/24
36/10
Mr. Pollitt [1]  24/12
Ms. [12]  4/5 5/9 17/4
17/25 18/24 21/24
30/11 41/22 44/14
45/21 49/21 50/5
Ms. Davidson [10]  5/9
17/4 17/25 18/24 21/24
30/11 41/22 44/14
45/21 49/21
Ms. Lustig [2]  4/5 50/5
much [20]  3/24 4/5 5/8
6/14 23/10 28/20 29/10
30/9 34/3 37/18 38/14
38/18 38/18 39/8 39/19
39/23 40/23 48/22 49/1
54/22
multiple [4]  24/14
27/21 31/9 47/21
music [1]  33/2
must [1]  44/7
my [23]  4/25 6/15
13/23 14/24 14/25
16/13 16/16 37/25
37/25 38/3 38/6 38/7
38/10 38/11 38/11
38/14 38/15 38/19
38/21 38/22 39/5 47/5
50/9
myself [3]  38/20 38/24
39/5

**N**

name [1]  3/10
Narcotics [1]  1/20
nation's [1]  39/6
nature [1]  52/15
necessarily [3]  13/6
20/9 50/21
necessities [1]  35/4
neck [1]  23/24
need [2]  26/21 36/21
needs [2]  14/15 34/21
negative [2]  12/23
54/18
never [8]  15/18 15/25
19/18 20/6 25/22 32/19
38/2 39/2
new [4]  4/18 33/10
33/10 36/13
New York [1]  36/13
news [4]  10/13 13/25
17/20 29/16
next [4]  17/23 29/16
33/9 48/3
nexus [1]  14/15
Nice [1]  3/19
nicely [1]  27/17

**N**

no [21] 1/4 4/13 16/22 17/9 19/2 20/16 21/5 21/5 22/17 22/18 24/5 24/20 31/7 38/6 40/19 43/19 45/20 45/22 47/3 47/3 49/12
Nodding [1] 42/12
North [1] 1/21
not [69]
note [1] 4/14
noted [1] 45/18
nothing [3] 9/4 22/5 43/1
Notice [1] 45/5
notwithstanding [1] 48/3
now [19] 4/22 5/15 21/7 31/5 33/6 38/24 39/2 40/18 40/23 41/22 42/8 42/10 42/11 42/25 43/1 45/1 47/4 47/14 47/20
number [2] 26/7 26/12
NW [2] 1/15 2/12

**O**

object [1] 7/10
objection [1] 21/11
objections [5] 5/11 5/24 9/17 19/4 45/17
obstructing [2] 8/4 16/24
obstruction [9] 9/18 10/9 13/22 16/13 16/15 16/24 21/2 21/5 39/25
occurred [2] 17/7 43/6
odds [1] 13/21
off [1] 19/13
offense [6] 8/23 19/4 30/14 30/19 36/3 51/2
offenses [1] 53/7
offered [2] 35/18 35/21
Office [4] 1/14 2/3 39/15 44/4
officer [31] 2/8 7/6 9/20 15/17 19/16 19/18 19/19 19/23 19/23 20/3 20/4 20/7 22/5 22/6 22/18 22/19 23/1 23/7 23/14 23/20 23/23 23/23 24/5 24/6 24/8 24/24 28/2 28/5 31/20 31/20 39/21
officer's [1] 7/2
officers [18] 8/4 22/14 22/25 23/4 23/6 23/16 24/20 25/6 25/10 25/12 28/7 28/12 28/15 29/2 38/2 38/5 41/8 41/15
Official [1] 2/11
okay [18] 3/3 4/2 5/16 18/23 19/7 21/7 30/9 37/18 44/21 44/25 45/12 45/16 46/21 48/1 48/3 49/20 52/24 53/14
old [5] 13/2 20/16 30/19 30/23 32/16

once [2] 8/18 33/2
one [15] 8/13 15/11 15/20 20/23 25/7 28/2 29/24 30/7 34/11 34/16 37/4 37/17 44/18 49/1 52/2
ones [3] 19/5 30/6 30/6
ongoing [1] 16/14
only [11] 6/6 20/17 22/23 23/2 30/13 40/1 47/19 49/13 49/24 50/8 53/9
opinion [2] 4/25 6/16
opposed [3] 13/7 16/16 50/18
opposing [2] 41/9 41/9
options [1] 44/5
orally [1] 48/13
order [2] 43/23 43/25
organizations [1] 31/16
ostensibly [1] 21/24
other [30] 4/14 10/8 12/19 12/21 13/20 19/1 20/23 20/24 22/7 23/16 23/17 24/2 26/10 26/16 29/9 30/7 30/15 31/20 32/3 32/7 32/20 35/8 36/8 36/21 37/4 42/4 43/19 44/6 52/18 54/8
others [2] 22/9 41/3
otherwise [3] 7/10 20/17 32/22
our [19] 5/11 6/11 8/6 8/18 9/12 10/17 15/14 17/3 19/6 22/13 22/13 22/14 25/13 30/18 35/7 40/20 41/20 41/20 44/16
out [15] 16/22 17/19 20/13 23/25 24/16 25/5 34/24 39/18 40/17 43/7 47/19 49/13 49/24 54/16 54/20
outlets [1] 10/13
outs [1] 49/12
outside [4] 9/1 22/2 33/5 51/11
over [5] 10/18 17/20 29/16 34/19 38/12
overthrowing [1] 42/19
overweighs [1] 9/10
own [1] 38/4

**P**

p.m [2] 1/6 55/5
pages [1] 15/1
paid [1] 43/24
pain [3] 25/11 28/12 28/20
parents [1] 31/4
parents' [1] 32/23
part [13] 11/23 12/3 15/8 26/15 35/22 35/25 36/1 37/4 41/5 41/21 44/4 50/2 51/14
participate [2] 35/17

particularly [4] 23/1 27/25 49/4 54/2
past [3] 33/12 34/20 38/1
pay [2] 37/1 43/21
peace [1] 38/25
peers [1] 32/25
pend [1] 50/7
pending [12] 4/15 4/19 5/2 45/25 46/7 46/11 46/14 48/5 48/12 48/18 49/22 50/7
people [19] 10/18 10/22 12/19 13/25 17/18 17/20 18/3 22/8 22/12 24/7 26/9 27/1 29/9 32/20 33/10 34/2 35/8 42/4 54/16
people's [1] 24/2
pepper [6] 8/24 8/25 20/9 28/16 37/6 41/13
perfect [1] 34/19
period [4] 18/2 33/18 34/18 35/14
periods [1] 35/24
permission [1] 45/8
person [3] 22/4 24/7 38/18
personally [1] 25/16
perspective [1] 38/3
photos [1] 18/21
physical [1] 41/14
physically [1] 22/10
pick [1] 35/19
pictures [1] 35/6
piece [1] 36/15
placement [1] 44/22
Plaintiff [1] 1/4
planned [1] 9/3
planning [3] 6/5 9/6 33/22
play [1] 36/21
please [4] 3/2 3/9 11/18 19/10
PO [1] 34/20
point [26] 10/8 10/21 13/23 14/8 14/20 14/21 14/21 14/24 14/24 14/25 15/6 16/13 17/11 17/19 20/23 24/11 24/23 25/8 25/23 28/4 28/17 29/7 29/8 29/12 30/18 53/22
point-blank [3] 25/8 28/4 28/17
point-blank-range [1] 24/11
points [8] 5/14 5/17 5/21 32/15 39/18 40/17 43/7 50/11
police [1] 13/20
Pollitt [14] 19/23 20/3 20/5 22/6 22/18 23/1 23/7 23/14 23/20 23/23 24/5 24/12 24/24 31/20
Pollitt's [2] 24/6 28/5
pond [1] 33/9

position [12] 6/12 7/23 7/25 8/18 9/12 10/20 26/18 35/7 37/5 45/25 46/18 50/16
possessing [1] 44/7
possession [2] 53/7 53/7
possibility [2] 16/22 48/18
possible [3] 7/10 16/21 38/20
possibly [1] 51/5
post [6] 4/24 6/15 6/15 16/2 46/23 47/6
post-trial [5] 4/24 6/15 6/15 16/2 47/6
poster [1] 17/19
posting [1] 18/2
posts [4] 11/6 12/8 12/23 18/20
potentially [3] 12/6 13/7 23/5
power [1] 51/20
practical [1] 48/7
practicing [1] 33/8
preface [1] 21/14
preliminary [5] 4/12 5/5 5/6 5/9 19/1
premature [1] 4/19
prepared [2] 5/3 33/19
preponderance [1] 9/14
presence [1] 6/7
present [3] 3/23 21/23 37/13
presentations [1] 26/1
presented [2] 16/10 51/22
Presentence [2] 4/4 44/5
preservation [1] 14/12
pretrial [4] 5/1 34/17 34/24 36/24
pretty [5] 6/25 25/19 26/11 38/16 48/22
prior [5] 7/22 9/3 22/18 37/10 50/15
prison [4] 25/15 37/2 47/21 54/19
probably [1] 42/14
probation [7] 2/8 9/20 21/12 30/3 39/14 44/4 50/2
Probation's [4] 10/6 21/15 21/19 29/24
problem [3] 11/23 47/16 51/7
procedurally [1] 46/15
proceed [1] 4/11
proceedings [4] 1/9 2/15 55/5 56/4
process [1] 38/19
produced [1] 2/15
produces [1] 20/15
Progress [1] 44/12
proper [3] 47/16 48/10 53/20

property [2] 35/11 35/12
propose [2] 26/12 44/14
proposed [1] 44/1
prosecute [1] 15/2
prosecuted [6] 10/19 10/22 13/12 14/3 14/7 16/17
prosecution [2] 16/25 40/4
prosecutor [1] 26/24
protecting [3] 22/9 41/10 41/17
protector [1] 24/9
Proud [1] 37/12
prove [1] 6/9
provided [2] 32/10 35/6
providing [1] 37/24
PSR [1] 5/12
public [2] 2/3 33/1
pulled [2] 23/16 23/25
punishment [2] 35/15 42/7
purely [2] 23/20 46/13
purposes [1] 30/25
push [1] 38/19
pushed [1] 28/3
put [6] 17/19 19/6 21/8 22/10 22/14 54/19
putting [2] 22/9 24/4

**Q**

question [6] 46/6 49/9 52/8 52/9 52/13 53/25
quickly [1] 8/10
quieter [1] 35/9

**R**

raised [1] 53/25
raising [2] 52/7 52/9
rallying [1] 41/3
range [9] 8/6 8/10 20/15 21/19 21/22 24/11 25/8 28/17 31/13
rare [1] 15/21
rather [1] 40/6
Re [1] 44/12
Re-Entry [1] 44/12
reactivated [2] 11/3 11/15
reactivates [1] 29/18
reactivating [2] 13/4 40/2
reactivation [3] 11/20 14/10 15/7
ready [1] 4/11
real [1] 42/7
really [14] 7/20 10/23 11/22 32/11 32/12 32/19 33/11 34/3 34/7 34/25 35/5 35/25 52/19 54/10
Realtime [1] 2/10
reason [5] 11/14 22/17 34/15 42/8 46/8
reasonable [1] 12/24

64

**R**

**reasons [7]** 13/20 37/15 39/11 48/10 50/8 54/5 54/9
**rebellion [2]** 40/25 41/4
**received [1]** 18/16
**recognize [5]** 20/14 21/22 40/18 47/16 48/2
**recognized [1]** 37/9
**recommend [2]** 44/22 50/2
**recommendation [5]** 4/6 21/17 44/16 44/17 50/2
**recommended [3]** 29/25 30/3 44/4
**record [4]** 3/10 19/3 45/18 56/3
**recorded [1]** 2/15
**records [5]** 18/1 18/4 18/7 18/8 18/17
**rectify [1]** 47/24
**reduction [1]** 15/10
**refer [1]** 7/22
**referring [1]** 8/15
**reflection [1]** 33/16
**reflective [1]** 34/7
**regard [1]** 24/5
**regarding [3]** 5/11 15/18 39/21
**regardless [2]** 52/18 54/4
**Registered [1]** 2/10
**reiterate [1]** 32/15
**reiterated [1]** 15/24
**relate [1]** 9/24
**related [3]** 10/3 11/7 15/15
**relating [1]** 10/2
**release [15]** 34/17 34/18 34/24 35/15 35/22 36/24 37/17 38/1 42/22 43/18 43/19 43/24 44/13 48/5 48/9
**released [3]** 48/24 54/15 54/21
**releasing [1]** 53/21
**relevant [2]** 14/22 42/21
**religious [1]** 32/22
**remain [1]** 47/19
**remorse [1]** 15/22
**remote [1]** 13/19
**repeated [1]** 34/8
**repeatedly [1]** 23/24
**replace [1]** 40/20
**Report [2]** 4/4 44/5
**Reporter [4]** 2/9 2/10 2/10 2/11
**reporting [1]** 10/14
**representative [1]** 27/7
**represented [1]** 32/7
**represents [1]** 33/23
**request [4]** 10/5 29/24 37/16 45/8
**requested [2]** 29/23 31/12
**requesting [1]** 49/
**require [1]** 51/2
**required [3]** 8/16 9/13 44/11
**requirement [1]** 16/23
**requirements [1]** 34/12
**requires [6]** 6/7 6/8 6/22 31/18 31/23 51/1
**requisite [1]** 14/5
**resided [1]** 30/23
**respect [10]** 6/3 7/4 9/17 9/18 9/19 10/6 11/2 36/6 37/10 50/5
**respond [2]** 6/1 9/16
**response [1]** 17/4
**responses [1]** 13/5
**responsibility [8]** 15/10 15/12 15/21 16/3 19/19 39/4 39/18 39/24
**responsible [1]** 24/4
**responsive [1]** 34/20
**rest [2]** 9/7 31/10
**restaurant [1]** 31/2
**restitution [1]** 43/23
**restrictions [1]** 44/10
**result [1]** 33/11
**resulted [1]** 35/3
**retaliation [2]** 24/19 24/20
**return [2]** 18/16 34/3
**returned [1]** 15/1
**reviewed [4]** 4/4 4/7 4/9 5/17
**right [62]**
**rioters [1]** 10/14
**ripe [1]** 46/14
**ripeness [1]** 46/19
**rise [1]** 55/3
**RMR [2]** 56/2 56/8
**road [1]** 35/19
**roams [1]** 29/13
**roll [1]** 26/23
**Room [1]** 2/13
**ruled [1]** 6/15
**ruling [3]** 47/2 52/3 52/14
**run [3]** 43/17 54/10 54/10

**S**

**sadistic [1]** 29/6
**said [13]** 12/9 15/11 17/4 19/23 21/16 27/17 32/2 36/17 39/19 42/17 47/4 50/18 53/4
**sake [2]** 25/12 29/5
**same [1]** 52/19
**satellite [2]** 44/20 44/23
**saw [3]** 24/13 33/24 38/4
**say [15]** 5/19 6/23 11/14 13/10 15/5 18/17 24/8 26/6 37/21 38/9 39/7 40/12 50/6 54/14 55/1
**saying [2]** 14/16 52/18
**says [2]** 41/22 50/5
**scampers [1]** 29/
**scared [1]** 23/4
**school [1]** 33/1
**Schwartz [1]** 37/7
**scope [1]** 52/3
**search [1]** 18/16
**seat [1]** 39/9
**seated [1]** 3/2
**second [1]** 14/21
**section [3]** 1/20 53/19 53/20
**security [3]** 44/18 44/20 44/23
**see [10]** 3/16 8/10 18/20 21/7 22/5 32/13 33/4 41/18 54/14 54/18
**seems [2]** 20/16 29/17
**seen [2]** 25/22 38/3
**seized [1]** 18/2
**self [1]** 50/3
**self-surrender [1]** 50/3
**sending [2]** 18/3 37/2
**sense [4]** 9/25 12/22 25/18 54/18
**sent [2]** 14/11 17/6
**sentence [33]** 5/3 26/3 26/4 26/20 26/21 27/7 28/25 29/23 30/16 31/12 31/24 33/19 34/14 36/22 37/3 37/14 37/16 37/21 43/4 43/12 43/13 43/13 43/16 45/18 46/4 49/1 49/6 52/10 52/14 52/19 52/21 54/2 54/4
**sentenced [3]** 30/5 47/5 47/21
**sentences [3]** 26/18 26/25 37/6
**sentencing [17]** 1/9 3/6 4/3 5/25 19/6 19/17 20/14 31/19 32/10 33/24 34/4 35/7 36/1 39/10 42/15 44/5 47/6
**sentencings [1]** 25/18
**separate [1]** 46/10
**separated [1]** 9/23
**separately [2]** 46/9 53/12
**serious [10]** 6/4 6/7 7/7 7/11 26/11 31/7 31/15 36/7 43/13 54/8
**serve [1]** 37/3
**served [1]** 43/2
**service [3]** 35/17 35/24 43/25
**serving [1]** 46/3
**setting [1]** 51/18
**several [2]** 35/11 35/12
**shack [1]** 35/11
**shall [1]** 44/2
**she [2]** 38/7 41/22
**She's [1]** 17/5
**sheds [1]** 35/5
**sheltered [1]** 32/5
**shorter [1]** 49/1
**shot [1]** 24/25
**should [23]** 9/20 10/21
21/1 21/16 23/21 25/21 26/16 28/25 29/3 30/4 42/5 46/3 46/12 47/9 47/13 47/23 48/3 48/23 49/12
**shouldn't [2]** 47/14 47/17
**shoved [1]** 28/2
**show [4]** 18/1 18/1 18/5 42/4
**showing [1]** 42/1
**shown [1]** 34/21
**shows [1]** 29/4
**siblings [2]** 31/4 38/22
**sic [1]** 19/16
**side [2]** 35/19 41/10
**sign [1]** 35/22
**significant [8]** 25/15 25/15 34/13 35/15 42/15 42/23 43/4 43/4
**significantly [5]** 28/24 31/16 36/7 36/9 36/14
**similar [3]** 32/21 32/22 51/23
**simple [1]** 35/9
**simply [4]** 6/12 50/20 51/1 51/1
**since [2]** 30/1 42/22
**single [2]** 8/8 34/21
**sir [1]** 54/22
**situation [3]** 24/5 29/13 39/2
**six [1]** 43/17
**small [1]** 33/8
**smiles [1]** 25/1
**smirks [1]** 25/2
**Smith [2]** 1/13 3/12
**smothered [1]** 23/11
**snowball [1]** 51/6
**so [94]**
**so I think [4]** 4/11 27/16 28/22 41/23
**so this is [2]** 39/10 39/23
**social [3]** 36/16 42/18 43/10
**solely [1]** 22/19
**some [13]** 10/21 12/11 13/19 17/2 25/7 25/8 26/14 29/14 30/6 31/14 41/18 41/18 43/2
**somebody [3]** 16/16 23/4 28/19
**someone [1]** 24/21
**something [9]** 5/18 8/11 23/10 23/19 23/22 24/18 48/23 50/17 50/20
**son [1]** 38/22
**soonest [1]** 47/24
**sorry [12]** 5/5 8/4 17/11 19/25 20/22 25/22 35/12 38/2 38/5 40/13 47/12 48/1
**sort [13]** 20/17 20/18 21/14 22/2 24/16 27/1 28/6 28/11 29/4 46/15
**sounds [1]** 7/15
**speak [1]** 21/24
**specific [3]** 6/20 12/12 49/3
**specifically [3]** 5/22 7/14 9/17
**speculating [1]** 11/5
**speed [1]** 7/6
**spent [1]** 41/6
**spooked [1]** 13/8
**spray [8]** 8/24 8/25 20/9 23/8 25/10 28/5 28/16 37/6
**sprayed [4]** 8/25 20/8 28/16 41/13
**spraying [2]** 7/1 20/5
**spreading [1]** 38/25
**stain [1]** 41/20
**stand [2]** 22/7 22/20
**standard [3]** 6/6 51/23 53/17
**standpoint [1]** 48/8
**start [5]** 17/13 19/12 27/12 38/11 39/13
**started [3]** 30/21 30/24 33/4
**state [2]** 3/10 44/6
**STATES [8]** 1/1 1/3 1/10 3/7 3/12 3/14 33/7 41/2
**statute [3]** 6/20 50/6 50/6
**stenography [1]** 2/15
**still [9]** 13/10 14/15 19/18 41/16 42/10 42/11 50/5 52/10 52/10
**stopped [1]** 32/17
**Street [3]** 1/15 1/21 2/5
**stronger [1]** 14/20
**strongest [1]** 15/5
**stuff [2]** 24/22 38/16
**stupidest [1]** 38/10
**subject [3]** 12/5 19/13 35/14
**subjected [1]** 33/18
**subjecting [1]** 34/17
**submit [1]** 6/21
**submitted [4]** 4/7 4/10 4/10 5/13
**substance [4]** 11/2 20/8 44/7 44/10
**substantial [4]** 49/8 52/8 52/9 53/25
**substantially [1]** 28/25
**succeed [1]** 14/21
**success [1]** 48/19
**successfully [1]** 15/2
**such [3]** 6/7 7/5 8/14
**suffer [2]** 40/4 41/16
**suffered [2]** 28/8 41/14
**sufficiently [1]** 54/1
**suggest [1]** 51/15
**Suite [3]** 1/15 1/21 2/5
**sum [1]** 41/23
**supervised [6]** 34/18 35/15 35/22 37/17 43/18 43/19

**S**

supervision [1] 44/2
support [3] 7/23 11/13 42/1
supported [1] 9/4
suppose [1] 46/17
suppress [1] 10/17
Supreme [1] 48/13
Supreme Court [1] 48/13
sure [5] 5/10 19/7 23/22 50/10 50/13
surprising [1] 18/15
surrender [1] 50/3
symbol [1] 41/4
system [1] 22/13

**T**

take [1] 23/5
taken [1] 46/3
takes [1] 31/24
taking [1] 13/9
talk [5] 5/22 6/1 32/3 45/1 49/22
talked [2] 30/13 32/2
talking [10] 8/12 13/15 17/5 19/24 31/5 42/19 53/8 53/10 54/2 54/8
Tampa [2] 1/21 1/22
targeting [1] 25/10
tased [1] 23/24
technical [4] 16/9 39/20 46/13 46/13
teenager [1] 33/17
telephonically [1] 3/13
tell [1] 26/11
temerity [1] 25/12
tension [1] 50/16
term [1] 37/17
terms [16] 6/19 8/23 11/21 13/3 13/24 14/16 15/3 15/15 19/4 19/9 25/9 27/25 34/13 36/2 37/4 50/14
terrifying [1] 23/2
testified [1] 36/11
testimonial [1] 42/4
testimony [1] 22/7
testing [1] 44/10
than [26] 8/14 8/19 10/17 10/25 12/21 16/6 16/9 22/7 26/4 26/8 27/24 28/24 28/25 30/4 30/5 31/6 31/25 34/19 36/9 37/2 39/19 40/6 40/19 42/25 49/2 54/4
thank [23] 3/15 3/24 4/5 5/8 5/20 18/23 19/7 19/11 19/25 20/3 27/18 30/12 37/18 37/19 37/23 37/25 39/8 40/13 42/1 44/24 45/20 54/22 54/24
thank you [17] 3/15 3/24 5/20 18/23 19/7 20/3 27/18 30/12 37/18 37/19 37/25 39/8 42/1 44/24 45/20 54/22

Thank you so much [1] 5/8
thank you very much [1] 4/5
thanks [1] 30/9
that [360]
that's [46] 6/23 8/14 8/18 11/15 11/23 12/12 14/22 14/24 18/5 18/15 18/21 20/24 21/23 24/1 25/4 26/7 26/8 26/15 26/17 29/15 29/19 38/8 39/7 40/14 41/23 42/14 42/21 42/24 42/25 43/3 43/12 44/11 46/6 46/15 46/17 47/4 48/16 48/21 50/21 50/22 51/14 52/19 52/25 53/6 53/17 54/9
their [19] 5/25 11/2 14/10 19/17 22/6 22/7 22/8 22/9 22/14 23/5 28/18 32/19 32/21 37/5 41/8 41/10 41/17 41/18 50/2
them [12] 20/13 22/10 22/17 22/18 22/22 23/5 23/17 38/23 40/10 41/16 41/19 46/8
then [42] 4/17 4/18 4/24 5/2 6/1 9/18 9/22 10/8 10/18 10/25 11/3 11/15 11/16 15/8 18/19 19/4 21/6 23/11 23/11 24/13 24/21 24/25 24/25 25/5 28/6 29/7 29/18 30/24 33/6 35/19 36/12 40/6 48/3 48/4 49/9 49/23 50/21 51/10 51/19 52/7 52/20 53/12
then-girlfriend [1] 33/6
there [58]
there's [18] 4/18 5/18 5/21 6/20 7/3 9/4 11/13 12/7 13/24 16/8 16/22 16/22 18/17 22/18 24/20 28/13 49/12 51/7
therefore [3] 40/9 40/22 48/23
these [13] 20/2 22/8 22/14 25/12 25/14 25/24 27/3 36/1 37/15 37/24 40/18 48/20 54/16
they [37] 5/24 6/11 6/12 7/12 10/13 10/24 11/6 12/13 12/17 12/19 13/14 13/21 14/11 14/11 14/12 14/25 15/1 18/1 18/11 18/12 21/6 22/19 22/20 22/25 25/14 27/25 32/20 37/5 37/10 40/4 41/8 41/9 41/10 41/13 41/14 41/17 53/6
they're [6] 21/8 22/16 25/15 35/22 43/8 46/9

thirty-two [3]
35/21
thing [1] 39/2
things [17] 4/14 12/9 12/12 15/11 18/3 18/6 20/12 21/25 23/17 27/3 28/24 29/18 33/11 38/19 38/23 40/18 51/6
think [138]
thinks [1] 16/17
third [1] 28/3
this [66]
those [18] 9/25 10/3 18/5 18/7 19/4 21/25 26/14 26/16 28/17 28/23 35/24 36/14 37/7 37/10 37/13 37/14 43/15 44/5
though [4] 14/25 27/19 45/13 50/1
thought [2] 21/18 38/20
thoughtful [1] 25/25
thousand [1] 10/19
thousands [1] 10/22
threatened [1] 51/2
threw [1] 28/2
through [4] 10/4 15/23 38/5 43/19
throughout [1] 34/8
thwart [2] 14/4 14/10
time [22] 4/25 13/2 15/6 15/25 18/2 25/15 30/20 34/8 34/21 34/24 40/24 41/6 42/10 42/14 43/1 43/2 43/2 43/10 47/5 47/17 54/3 54/19
timeline [2] 13/13 17/8
times [2] 24/14 36/13
tin [1] 35/10
titled [1] 56/4
today [12] 3/6 4/2 4/17 4/19 31/5 34/4 34/9 39/4 41/25 47/25 54/3 54/13
together [2] 9/21 10/1
ton [1] 25/21
too [7] 14/8 16/2 20/2 30/20 32/24 33/3 34/23
took [2] 4/23 12/9
tossed [1] 28/14
total [1] 41/23
tough [1] 16/6
towards [1] 7/6
town [1] 32/25
trained [1] 23/10
transactional [4] 17/25 18/4 18/7 18/17
transcript [3] 1/9 2/15 56/3
transcription [1] 2/15
trash [1] 35/19
travel [1] 33/7
treated [1] 22/17
treating [1] 27/1
trial [18] 4/16 4/24 6/9 6/15 6/15 15/11 15/14 16/1 16/2 16/6 19/13

46/23 47/6 47/9 47/19
trigger [2] 8/16 14/5
trouble [3] 12/4 25/5 34/22
true [4] 19/15 20/11 27/3 32/1
trust [1] 39/1
trusting [1] 37/25
trying [9] 12/4 22/12 24/18 25/10 25/11 29/9 29/9 29/12 31/8
turns [1] 24/15
twice [4] 26/4 26/8 26/8 26/14
two [19] 4/14 10/11 11/1 14/6 15/6 15/10 17/5 17/6 17/13 17/14 22/8 30/21 30/24 39/16 42/24 43/3 43/18 47/11 52/1
two-level [1] 15/10
two-years [1] 17/5
type [6] 15/3 32/1 32/17 35/23 35/24 37/3
types [1] 36/1

**U**

U.S [2] 1/14 2/11
U.S. [1] 10/23
U.S. Capitol [1] 10/23
ultimate [2] 21/21 47/5
unable [2] 23/9 45/7
uncover [1] 13/21
under [14] 8/4 8/5 8/9 8/13 9/21 9/23 10/5 15/19 30/15 32/21 33/14 33/22 49/13 51/20
understand [6] 9/11 14/23 25/17 36/5 45/10 45/13
understood [2] 11/24 40/23
underway [1] 17/18
unfair [1] 26/22
uniforms [1] 22/20
UNITED [8] 1/1 1/3 1/10 3/7 3/12 3/14 33/7 41/2
United States [4] 3/12 3/14 33/7 41/2
United States of [1] 3/7
unlawfully [1] 44/7
unless [1] 46/25
unlike [4] 23/6 32/6 32/7 33/3
unlikely [1] 16/17
unreasonable [1] 27/9
until [9] 10/25 11/1 13/14 13/15 17/13 17/14 30/22 32/16 46/14
unusual [2] 54/6 54/8
up [9] 5/14 25/16 30/25 34/21 35/19 36/10 36/23 46/8 46/18

upbringing [2] 32/6 32/9
upfront [1] 20/12
upon [1] 43/24
upshot [1] 11/19
upstanding [1] 20/18
us [4] 3/20 5/25 32/24 41/20
USAO [2] 1/13 1/19
usdoj.gov [2] 1/17 1/23
use [9] 6/22 9/24 12/22 25/3 34/12 51/2 51/3 51/3 54/19
used [3] 7/12 24/23 28/23

**V**

VA [1] 2/6
value [2] 49/3 49/5
variance [1] 34/14
varied [2] 26/16 48/25
vary [3] 25/20 25/21 30/2
varying [1] 27/8
vastly [1] 36/17
versus [5] 3/7 5/23 7/15 7/18 8/12
very [15] 4/5 8/22 13/10 23/10 30/14 34/5 38/4 38/5 38/12 39/8 42/2 42/11 42/16 54/8 54/22
victims [1] 22/3
video [10] 4/10 12/8 16/8 24/14 29/14 32/10 39/22 39/22 39/22 42/2
videoconference [1] 3/13
videos [1] 33/24
view [6] 13/5 50/19 51/8 51/12 51/15 51/16
violence [20] 9/3 47/11 47/12 47/20 47/22 48/19 49/9 49/23 49/23 50/7 50/15 51/17 51/19 52/2 52/7 53/3 53/5 53/6 53/9 53/24
violent [2] 1/20 27/25
Virginia [1] 2/4
visitors [1] 32/20
voted [1] 40/20
votes [1] 41/11
vs [1] 1/5
vulnerable [1] 23/17

**W**

walked [1] 15/10
walking [1] 10/3
want [15] 4/14 5/18 9/16 11/14 15/9 16/13 17/3 18/20 19/12 26/11 30/20 32/3 33/21 46/18 50/1
wanted [8] 5/14 5/22 6/1 17/19 19/1 32/15 40/21 40/22
warden [1] 35/18

**W**

**warrant [1]** 18/16
**warranted [2]** 15/22 37/14
**warrants [1]** 16/2
**was [90]**
**Washington [3]** 1/5 1/16 2/13
**wasn't [6]** 11/17 11/19 20/23 47/5 52/7 53/24
**way [13]** 12/24 22/14 22/15 22/16 22/20 24/16 27/1 27/4 32/23 41/25 46/15 52/19 52/25
**ways [5]** 13/5 25/7 25/8 33/4 38/17
**we [68]**
**We never [1]** 15/18
**we would [1]** 51/15
**we'll [1]** 45/1
**we're [13]** 3/6 4/2 4/11 5/14 8/12 13/1 13/15 27/1 31/5 31/8 31/21 53/9 54/2
**we've [6]** 19/6 32/2 32/8 39/11 51/21 51/22
**weapon [16]** 6/22 9/25 15/16 22/23 22/23 23/5 24/11 28/18 28/23 34/12 50/17 50/20 51/4 51/13 52/11 54/1
**weapons [3]** 7/4 28/17 48/20
**wearing [1]** 22/20
**well [15]** 4/10 6/17 8/23 11/8 11/17 12/13 13/17 17/17 25/19 30/15 44/3 44/22 46/2 48/21 51/21
**well-founded [1]** 48/21
**went [3]** 27/21 33/1 38/5
**were [43]** 8/8 8/9 10/14 10/14 10/17 11/6 12/12 14/11 14/25 15/1 15/14 17/18 17/20 18/7 18/11 18/12 18/20 18/20 18/21 20/14 22/6 22/12 22/19 22/25 23/4 23/6 23/16 26/9 27/25 28/8 31/15 32/20 37/7 38/6 40/24 41/8 41/10 41/17 41/21 42/10 42/15 51/18 52/22
**weren't [7]** 18/21 20/21 41/9 41/9 42/18 48/20 52/11
**what [80]**
**what's [2]** 18/15 45/24
**whatever [4]** 11/25 12/2 14/9 28/15
**when [18]** 7/9 8/3 10/22 17/6 18/6 18/19 30/16 30/19 33/5 34/21 36/21 38/4 41/16 41/22 51/4 51/12 54/14 54/21
**where [10]** 15/21 16/7 23/23 25/19 29/21 30/25 48/12
**wherever [1]** 38/25
**whether [4]** 5/10 19/14 50/24 52/13
**which [17]** 4/25 7/18 9/24 10/4 15/19 15/23 16/14 19/13 26/24 29/6 41/7 41/10 41/18 41/18 46/13 52/15 53/7
**whichever [1]** 31/13
**while [9]** 4/23 25/16 27/6 27/24 34/17 35/8 35/9 44/2 48/24
**who [16]** 16/6 20/16 22/8 23/6 23/16 26/9 26/9 31/4 31/15 34/3 34/4 41/8 41/23 42/2 42/3 48/14
**who's [1]** 3/23
**whose [1]** 26/10
**why [6]** 6/5 7/1 26/8 26/11 31/21 46/8
**widely [1]** 10/14
**wielding [1]** 40/25
**wife [3]** 33/6 35/10 38/7
**will [13]** 4/22 19/8 23/25 31/10 38/24 39/14 41/19 41/19 43/20 43/23 44/12 45/11 54/16
**William [3]** 2/9 56/2 56/8
**willing [1]** 35/22
**wish [2]** 37/20 44/14
**within [3]** 44/12 45/4 45/5
**without [1]** 45/9
**witness [1]** 22/7
**won't [2]** 7/19 13/21
**words [2]** 20/25 25/6
**work [7]** 25/5 30/25 31/1 32/18 35/2 42/9 46/15
**worked [1]** 35/5
**works [2]** 52/20 53/1
**world [2]** 33/2 38/24
**worldly [1]** 32/24
**Worrell [1]** 37/7
**worried [2]** 24/19 49/4
**worse [9]** 23/19 25/9 27/23 28/7 28/9 28/12 28/24 30/5 30/6
**worst [2]** 30/7 36/25
**worth [1]** 8/15
**would [37]** 5/1 5/11 6/21 6/23 8/11 10/5 12/1 14/3 15/5 15/25 19/5 21/16 21/18 22/23 24/12 28/13 28/20 30/1 30/2 33/4 34/9 34/10 34/23 37/16 37/23 38/12 40/3 44/17 48/4 49/1 51/15 52/10 52/15 52/18 52/22 54/1 54/4
**wouldn't [4]** 9/8 11/10

**write [2]** 4/25 38/15
**written [1]** 47/1
**wrong [3]** 22/3 24/18 53/19

**Y**

**yank [1]** 29/9
**Yeah [1]** 50/13
**year [7]** 10/25 13/2 20/16 29/24 33/12 34/20 38/1
**years [20]** 8/12 10/11 11/1 14/6 15/7 17/5 17/6 17/13 17/14 29/24 29/25 30/18 30/21 30/23 30/24 32/16 33/8 42/25 43/3 43/18
**yes [14]** 4/21 16/7 16/19 20/3 28/10 36/18 37/22 44/15 44/24 45/15 46/1 46/20 47/7 49/11
**yesterday [1]** 47/24
**York [1]** 36/13
**you [158]**
**you know [1]** 28/2
**You may [1]** 39/9
**you're [19]** 15/5 19/24 25/19 25/20 26/3 27/14 28/20 30/2 41/3 42/10 42/11 42/11 45/7 52/7 52/9 53/7 54/7 54/14 54/20
**you've [11]** 13/18 25/25 27/16 27/17 28/19 30/5 30/6 42/3 42/9 42/21 43/2
**young [3]** 34/2 42/11 42/16
**your [82]**
**Your Honor [60]**
**youth [1]** 22/1

**Z**

**Zaremba [3]** 2/9 56/2 56/8